618 So.2d 923 (1993)
STATE of Louisiana
v.
Don Terry WISINGER.
No. 92 KA 0763.
Court of Appeal of Louisiana, First Circuit.
April 23, 1993.
Rehearing Denied June 16, 1993.
*925 Jason Lyons, Asst. Dist. Atty., Houma, for plaintiff and appelleeState of La.
Michael L. Thiel, Hammond, for defendant and appellantDon Terry Wisinger.
Before CARTER, LeBLANC and PITCHER, JJ.
CARTER, Judge.
Don Terry Wisinger was indicted with first degree murder, a violation of LSA-R.S. 14:30. He pled not guilty and, after trial by jury, was convicted as charged. The jury recommended that a penalty of life imprisonment be imposed. The trial court sentenced defendant to serve a term of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. Defendant has appealed, urging sixteen assignments of error. Assignments of error numbers 1-5, 8, 9, 11, and 13 expressly have been abandoned by defendant.

FACTS
On April 23, 1990, defendant shot and killed his next door neighbor, Mark Portier. The victim's wife testified that, at 3:23 a.m., the doorbell rang. Because of the time, she and her husband assumed there was an emergency. One of their neighbors recently had heart surgery, and the neighbor's family knew Mr. Portier was an emergency care provider. After Mr. and Mrs. Portier reached their carport door, Mrs. Portier asked who was there. When she got no reply, she unlocked the deadbolt. Her husband then opened the door and unlocked and opened the glass storm door. He then extended his hand, as if for a handshake, and said, "Hey, Don, what's wrong? What do you need?" Mrs. Portier saw her next door neighbor's face (defendant) and observed that he looked at both her and her husband. Because she was not dressed, she stood behind the door. She then noticed that the tone of her husband's voice changed as he took a step back and said, "Don, what are you doing?" Defendant then fired one shot, striking Mr. Portier just beneath his breastbone. The coroner estimated that the shot was fired from a fairly close range, about two to three feet away.
*926 After the shot, Mr. Portier fell into the house; and Mrs. Portier slammed the door and locked the deadbolt. Before she was able to assist her husband, defendant fired at the same door, striking the deadbolt lock. Mr. Portier then told his wife to get their gun. Mrs. Portier tried to drag her husband away from the door, but she was unable to do so. She grabbed her cordless telephone and immediately contacted law enforcement authorities. While on the phone with the sheriff's office, she got her children out of their rooms and secured them in her bedroom. She continued to hear defendant trying to get into the house, at both the carport door and the front door. Defendant then fired a third shot at the front door.
Before defendant was able to enter the Portier's home, Terrebonne Parish Sheriff's deputies arrived. The first deputy on the scene observed defendant at the front door. Defendant walked to the carport door and pulled on the door with one hand while holding the gun in his other hand. When the deputies identified themselves and ordered defendant to put down the gun, defendant cooperated and placed the gun, a semi-automatic .45 caliber pistol, on the windowsill of the Portier's carport window. The deputies arrested defendant at the scene and brought him to the courthouse for booking. Mr. Portier died at the scene from a loss of blood.
Deputies found evidence that at least three shots were fired at the Portier's residence. An expert qualified in firearms identification concluded that the damage to the deadbolt locks was consistent with bullet holes. The deputies also found a live round (unused bullet) outside defendant's residence, a spent casing inside his residence, and a bullet hole on an interior wall in defendant's residence.
Defendant's wife testified as a defense witness. Recapping her husband's activities on the day before the offense, she recalled that she, her husband, and their son went to the video store and to the supermarket. At the supermarket, defendant purchased a liter of Jack Daniel's whiskey. At about 8 p.m., the family watched a video, and after her son went to bed at about 10 p.m., she and her husband watched another video, during which, she saw her husband have two drinks of whiskey. After watching a few minutes of the third video (a gangster movie), defendant's wife went to bed, leaving defendant to watch the movie alone. At about 2 a.m., defendant's wife was awakened when she heard defendant playing the stereo. When she questioned him about the music, he turned the volume down and indicated he would go to sleep when the tape was over. Defendant's wife went back to sleep and was awakened by a deputy at about 4 a.m.
Defendant's wife indicated that, beginning in 1988, her husband began seeing Dr. Herman Walker about depression and anxiety. Defendant faithfully took the anti-depressant and anti-anxiety medications prescribed by Dr. Walker. Defendant had just seen Dr. Walker three days prior to the incident involved herein.

ADMISSION OF OTHER CRIMES EVIDENCE
In three related assignments of error (numbers six, seven, and fifteen), defendant contests the admission of evidence concerning a prowler which the victim's wife observed in her yard on several occasions since 1981. In the sixth assignment, defendant argues that the court erred in allowing the evidence to be admitted. In the seventh assignment, defendant contends that the court erred in denying a motion to exclude the evidence. In the fifteenth assignment, defendant maintains that the court erred by failing to instruct the jury as to the limited purpose for which the other crimes evidence was admitted.
Mrs. Portier testified that on various nights since 1981, and up until her husband's death, she had observed a prowler while standing at her kitchen window. On at least two of the occasions (in early 1990 and again about a week before her husband's death), she was able to recognize defendant as being the prowler, but she did not report these incidents to law enforcement authorities. Initially, defendant did not object to this testimony. However, after *927 the bulk of this other crimes evidence had been admitted through Mrs. Portier's testimony, defense counsel objected that the evidence was irrelevant because the time frame had not been established. The court overruled the objection, but ordered the state to establish specific dates for the other crimes.
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. McDermitt, 406 So.2d 195, 200 (La.1981). However, article 404(B)(1) of the Louisiana Code of Evidence provides the following exceptions to this general rule of inadmissibility:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The second sentence of this article refers to other crimes evidence which previously was admissible under LSA-R.S. 15:445-446 (Prieur evidence) and LSA-R.S. 15:447-448 (res gestae). See LSA-C.E. art. 404, comments (k) & (m).
In the event that the state desires to introduce other crimes evidence to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident," the state is required to comply with the procedural safeguards of State v. Prieur, 277 So.2d 126, 130 (La. 1973). See LSA-C.E. art. 1103. Under these safeguards, the state is required to give pretrial notice of its intention to introduce the other crimes evidence, to make a determination that the evidence is admissible, and to give the jury limiting instructions. The state is also required to meet the test for admissibility established in State v. Hatcher, 372 So.2d 1024, 1033 (La. 1979) (on rehearing), which requires, among other things, that the "modus operandi employed by the defendant in both the charged and the uncharged offenses ... be so peculiarly distinctive that one must logically say they are the work of the same person."
In this case, the state made no attempt to comply with any of the requisite procedural requirements. Furthermore, the charged and the uncharged offenses are not similar. Thus, the other crimes evidence was inadmissible under Prieur.
Although the court erred in allowing the other crimes evidence to be admitted, we reject defendant's assignments of error relative to the admission of such evidence for the following reasons. Defendant did not file a motion in limine to exclude the other crimes evidence and did not object to the testimony on the grounds articulated on appeal. To preserve the right to appeal the introduction of testimony, the defendant must make a timely objection and state the specific ground of objection. LSA-C.E. art. 103(A)(1). See also LSA-C.Cr.P. art. 841; State v. Sosa, 328 So.2d 889, 892 (La.1976). A defendant is limited on appeal to the grounds for the objection which were articulated at trial. State v. West, 419 So.2d 868, 876 (La.1982). Additionally, defendant did not object to the court's failure to give a limiting instruction. To preserve the right to appeal the court's failure to give a particular jury instruction, the defendant must object before the jury retires for deliberations. LSA-C.Cr.P. art. 801. Thus, defendant is barred procedurally from advancing these assignments of error.
In any event, admission of the other crimes evidence was not reversible error. The evidence did not portray defendant as a bad person capable of murder and, thus, did not inflame the jury to the point that the jury was influenced to convict defendant of murder. Accordingly, the erroneous admission of the evidence of the prowler incidents was harmless beyond a reasonable doubt. See State v. Tucker, 602 So.2d 59, 68 (La.App. 1st Cir.), writ denied, 604 *928 So.2d 1320 (La.1992); State v. Trosclair, 584 So.2d 270, 278 (La.App. 1st Cir.), writ denied, 585 So.2d 575 (La.1991).
The assignments of error are without merit.

FAILURE TO INSTRUCT JURY AS TO INVOLUNTARY INTOXICATION
In assignment of error number ten, defendant claims that the court erred by failing to instruct the jury regarding the defense of involuntary intoxication. Defendant asserts that his intoxication was involuntary because he was not warned about the dangers of drinking alcohol while on the medications.
Involuntary intoxication is a defense if the "condition is the direct cause of the commission of the crime." LSA-R.S. 14:15(1).[1]See State v. Rives, 407 So.2d 1195, 1197-98 (La.1981). The reporter's comment to LSA-R.S. 14:15 mentions that involuntary intoxication could possibly result from the combined use of alcohol and medications:
Where the offender is forced or deceived into the intoxicated condition, so that it may be said to be involuntary, he is excused. Specific instances of this would include cases of actual compulsion, drunkenness or a drugged condition through the stratagem of another, taking the liquor or drug after a physician's prescription, or taking the drug by mistake. (Emphasis added)
Article 801 of the Code of Criminal Procedure provides that "[a] party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error." Defendant did not object to the court's failure to charge the jury on involuntary intoxication; therefore, he is barred procedurally and cannot complain on appeal of the court's failure to include the instruction. See State v. Motton, 395 So.2d 1337, 1348 (La.1981), cert. denied, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981).
Furthermore, even if defendant had objected to the court's failure to include the instruction, we would find no error in this case. The trial court is required to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. The charge must be supported by the evidence presented at trial because the court is not required to instruct the jury on abstract principles of law. State v. Telford, 384 So.2d 347, 350 (La.1980).
On appeal, defendant claims that the jury could have inferred from the testimony of defendant's physician, Dr. Walker, that defendant's intoxication was involuntary because defendant was not warned of the combined effects of the drugs and alcohol. However, the very section of Dr. Walker's testimony cited by defendant on appeal establishes that Dr. Walker warned defendant of the dangers of drinking alcohol while on the medication. Furthermore, as set out below in our discussion of assignment of error number fourteen, defendant's actions immediately following the offense and the medical testimony show that defendant was not intoxicated to any significant degree, especially not to the point where his intoxication could be considered to be the "direct cause of the commission of the crime." Thus, the defense of involuntary intoxication could not be inferred from the facts of this case, and the court did not err by failing to instruct the jury as to this defense. See also State v. Savoy, 551 So.2d 835 (La.App. 3rd Cir.1989) (court finds no error in not instructing the jury concerning involuntary intoxication where defendant claimed his addiction to drugs was so compulsive that taking drugs was an involuntary action on his part).
The assignment of error is without merit.

*929 INEFFECTIVE ASSISTANCE OF COUNSEL

In the twelfth assignment of error, defendant claims he had ineffective assistance of counsel. A convicted defendant who claims error because of his trial counsel's ineffectiveness must establish two separate elements in order to succeed:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, rehearing denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).
A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. Where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue was raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Bourgeois, 451 So.2d 172, 174 (La. App. 1st Cir.), writ denied, 457 So.2d 18 (La.1984).
Defendant's complaints concerning his trial attorney's performance can be divided as follows: (1) failure to object to testimony of Mrs. Portier concerning problems she had with defendant's wife and son; (2) failure to object to testimony of Mrs. Portier concerning the prowler; (3) failure to request a jury instruction on the limited purpose for which the other crimes evidence was introduced; and (4) failure to request a jury instruction on the defense of involuntary intoxication. We will address each of these areas separately.
1. Failure to object to testimony of Mrs. Portier concerning problems she had with defendant's wife and son
Defendant argues that his attorney should have objected and moved for a mistrial when Mrs. Portier was questioned about problems she had with defendant's wife and son. Defendant asserts that the evidence was irrelevant and maintains that, even if the evidence was relevant, it should have been excluded because the probative value was outweighed by the danger of prejudice. Defendant further contends the evidence was inadmissible character evidence.
During her testimony, Mrs. Portier described various problems which occurred after she moved into the neighborhood in 1979. She stated that her son and defendant's son were playmates. About a year or so after she moved into the neighborhood, while the boys were young, she told defendant's wife that she wanted to separate the boys for a few days because they had been fighting. After the separation, the boys continued to play together, but not at each other's home. Mrs. Portier testified that, when she was pregnant with her second child, she told defendant's wife that she needed to reduce stress to prevent a miscarriage. Mrs. Portier further explained that defendant's wife had been a source of stress for her because she continuously wanted to discuss why Mrs. Portier wanted to separate the boys. Defendant's wife testified that initially she thought Mrs. Portier wanted to separate the boys because her son did not speak clearly (as a result of a hearing problem), and the Portier boy was starting to speak the same way. However, defendant's wife later discovered that Mrs. Portier had other reasons for wanting to separate the boys. Mrs. Portier also detailed a confrontation between defendant and her husband several years earlier when Mrs. Portier threw twigs into defendant's yard. (The twigs had fallen from defendant's tree into the Portier's yard.) Defendant was upset about this and confronted Mr. Portier. Mrs. Portier testified that this was the only confrontation between defendant and her husband prior *930 to the murder. Defendant did not object to this testimony.
During the state's closing argument, the state indicated that it introduced this testimony to explain defendant's motive for killing Mr. Portier. The prosecutor argued that Mrs. Portier was defendant's actual intended victim. The prosecutor explained that defendant hated Mrs. Portier because he and his wife thought she blamed them for her miscarriage. Moreover, she discriminated against their son because of his hearing and speech impediment.
Although the problems with the children and the twig incident occurred several years before the instant offense, defendant's wife continued to discuss the events and admitted that she probably told her husband that she believed the Portiers did not want the boys to play together because of their son's speech and hearing problems. Thus, the testimony was relevant to establish a reason for defendant's dislike of the victim and/or his wife. Because the evidence was relevant, counsel's failure to object does not constitute ineffectiveness.

2. Failure to object to testimony of Mrs. Portier concerning the prowler

Defendant argues that counsel should have objected to Mrs. Portier's testimony regarding the prowler as being inadmissible under Prieur. Defendant also complains that counsel failed to move for a mistrial after this other crimes evidence was introduced.
As we indicated in connection with assignments of error numbers six, seven, and fifteen, introduction of the other crimes evidence was improper. Generally, counsel's failure to object to the testimony was deficient conduct. However, as indicated in Strickland v. Washington, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691, 104 S.Ct. at 2066. The defendant is required to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068.
Under the facts of this case, counsel's failure to object to the other crimes evidence did not prejudice defendant. Defendant has never contested that he was the person who shot the victim, and the evidence of his guilt was overwhelming. We find no indication that, absent admission of the other crimes evidence, the jury would have had a reasonable doubt as to his guilt. See Strickland v. Washington, 466 U.S. at 695, 104 S.Ct. at 2068-69. Thus, we find that counsel's failure to object to the other crimes testimony was not ineffective assistance of counsel.

3. Failure to request a jury instruction on the limited purpose for which the other crimes evidence was introduced

Defendant also asserts that his counsel should have requested a jury instruction as to the limited purpose for which the other crimes evidence was admitted. Additionally, defendant contends that his trial attorney did not request a hearing (under Prieur) regarding the admissibility of the other crimes evidence. Although we previously found that admission of the other crimes evidence was improper, we do not find counsel deficient for failing to request a limiting instruction. For the same reasons given for rejecting defendant's claim of ineffective assistance of counsel for failure to object to the other crimes evidence, we also find no merit to this claim.

4. Failure to request a jury instruction on the defense of involuntary intoxication

Defendant asserts that counsel should have requested that the court instruct the jury on the defense of involuntary intoxication. As already indicated in discussing assignment of error number ten, the testimony established that defendant was not involuntarily intoxicated. Because the defense of involuntary intoxication could not be inferred from the facts of this case, counsel did not perform deficiently in failing to request the instruction.
*931 After reviewing each of the separate arguments advanced by defendant, and after reviewing the conduct of his counsel throughout the trial, we find that defendant received effective assistance of counsel. Therefore, this assignment of error is without merit.

INSUFFICIENT EVIDENCE
In assignment of error number fourteen, defendant argues that the state's evidence was insufficient. Relying on testimony concerning the combined effects of taking the medications and drinking alcohol, defendant claims the state failed to prove specific intent to kill. Defendant further argues that the state failed to prove that defendant had the specific intent to kill or inflict great bodily harm on more than one person.
In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also LSA-C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
The section of the first degree murder statute applicable in this case defines the offense as being "the killing of a human being ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm upon more than one person."LSA-R.S. 14:30(A)(3). The Louisiana Supreme Court has interpreted this provision to require the state to prove that the offender specifically intended to kill more than one person and actually caused the death of one person and the risk of death or great bodily harm to at least one other person, all by a single act or by a series of acts in a single course of conduct. State v. Williams, 480 So.2d 721, 726 & 727 (La. 1985). See also State v. Deboue, 552 So.2d 355, 359 (La.1989), cert. denied, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 174 (1990).
Specific criminal intent is the "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent need not be proven as a fact and may be inferred from the circumstances present and the actions of the defendant. State v. Lewis, 525 So.2d 215, 217 (La.App. 1st Cir.), writ denied, 531 So.2d 469 (La.1988).
The evidence presented in this case clearly supports the conclusion that defendant specifically intended to kill or inflict great bodily harm on more than one person. Prior to shooting the victim, defendant made eye contact with both Mr. and Mrs. Portier as the couple answered the door. He fired the fatal shot at Mr. Portier from close range and fired a second shot through the carport door after Mrs. Portier closed it, damaging the deadbolt lock. Defendant also fired a shot through the front door. While Mrs. Portier was on the telephone with the sheriff's office, defendant persisted in trying to enter the Portier residence, both at the front door and at the carport door. The first deputy to arrive found defendant pulling on the carport door with the gun in his hand. Accordingly, defendant's claim that the evidence is insufficient to prove that he specifically intended to kill or inflict great bodily harm on more than one person is without merit.
Defendant's argument that his intoxication was such that it defeated the element of specific intent is also without merit.[2] Intoxication is a defense to a prosecution for first degree murder if the circumstances indicate that the intoxication, whether voluntary or involuntary, precluded the presence of specific criminal intent. See LSA-R.S. 14:15(2). When defenses *932 which defeat an essential element of an offense, such as intoxication, are raised by the evidence, the state must overcome the defense by evidence which proves beyond a reasonable doubt that the mental element was present despite the alleged intoxication. See State v. Lewis, 525 So.2d at 217.
The circumstances in this case do not indicate that defendant's alleged intoxication precluded the presence of the specific criminal intent required for first degree murder. Moments after the offense, sheriff's deputies arrested defendant. He was cooperative and followed their instructions without incident. Pursuant to their demand, he placed his weapon on the windowsill and put his hands in the air. He did not stumble or fall, and he cooperated as the deputies cuffed him and placed him in the patrol unit. The deputies were not required to repeat any of their instructions. An odor of alcohol was noticed on defendant, but the smell was "[n]othing out of the ordinary." Upon arrival at the station, defendant had no difficulty walking up the courthouse steps. He also negotiated several right angle turns on the route to the booking desk without swaying or stumbling. At the booking desk, he was polite and had no difficulty answering questions.
In support of his claim that his intoxication was of such a level that it precluded the presence of specific intent, defendant relies on the testimony of Dr. William George, a toxicologist and pathologist. Upon reviewing the photograph of a half empty liquor bottle purchased by defendant on the date of the offense, Dr. George estimated that approximately sixteen and a half ounces were removed from the bottle. Assuming defendant drank all of the missing liquor over a five hour period, Dr. George estimated the blood alcohol reading to be approximately .18 percent. Dr. George also explained that the combination of the alcohol and the medications would affect defendant's mood and behavior and cause confusion and disorientation.
Defendant also relies on the testimony of Dr. Thomas Fain, a psychologist. After interviewing defendant and reviewing the medical records and police reports, Dr. Fain concluded that defendant was insane at the time he committed the offense and did not have specific intent to kill the victim.[3] He based his conclusion on the combined effects of the alcohol and the medications.
Despite this testimony, the state overcame the defense. Dr. George's conclusions were based upon the assumption that defendant consumed about sixteen and a half ounces of alcohol. However, Dr. Fain testified that defendant told him he drank only three and a half drinks (with about one and a half ounces of alcohol in each drink). Dr. David Stafford, the state's expert toxicologist, estimated that the blood alcohol reading under these circumstances would be only about .04 percent. Dr. Stafford also testified that a person with a .18 reading would have had difficulty answering the booking questions and would have had impaired physical coordination. In anticipation of his testimony, Dr. Stafford walked the route defendant took at the courthouse after his arrest. He concluded that a person with a .18 reading would not have been able to negotiate the turns without some swaying or stumbling.
A portion of Dr. George's testimony also supports the state's position. After the prosecutor extensively described defendant's cooperative behavior following his arrest and his actions at the scene and at the jail, Dr. George testified that a person who behaved in the manner that defendant did after his arrest was not so impaired that he did not know what he was doing. Defendant's wife's testimony also supports the jury's decision that defendant was not so intoxicated that he was unable to form the requisite specific intent. Defendant's wife testified that, when she awoke at 2 a.m. and found defendant still awake and listening to music, defendant appeared to be normal, had no trouble understanding her, and was not slurring his speech.
*933 Accordingly, the circumstances do not indicate that the specific criminal intent required for first degree murder was precluded by intoxication. Therefore, this assignment of error is without merit.

NO RANDOM ALLOTMENT
In the sixteenth assignment of error, defendant maintains that the court erred by not requiring that defendant's case be randomly allotted. Defendant asserts that the prosecutor was allowed to choose the judge to whom the case would be assigned.
In State v. Simpson, 551 So.2d 1303, 1304 (La.1989) (per curiam), the Louisiana Supreme Court held that a criminal case allotment system, which allows the state to choose the judge who presides over a criminal case, violates due process. Defendant maintains that the allotment system used in this case was improper, but the record contains no information as to which allotment method was used. As an appellate court, we have no authority to receive or review evidence not contained in the trial court record. State v. Johnson, 529 So.2d 466, 474 n. 4 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989). Thus, we are not able to review the substantive merits of defendant's assignment of error.
Furthermore, we find no indication that defendant preserved the issue for appeal by objecting to the method chosen. See LSA-C.Cr.P. art. 841. Accordingly, defendant is procedurally barred from advancing the assignment of error on appeal.
In any event, even if the allotment system used was improper, we find that the error in this case would be harmless. Defendant does not allege that the trial judge to whom the case was allotted was biased in any manner. Therefore, no prejudice accrued to defendant due to the alleged error in the allotment system. See LSA-C.Cr.P. art. 921; State v. Claxton, 603 So.2d 247, 249-50 (La.App. 1st Cir. 1992). Accordingly, this assignment of error is without merit.

PATENT ERROR
In reviewing the record for patent error, we have found error in the sentence because the trial court did not give defendant credit for time served. See LSA-C.Cr.P. art. 880. Accordingly, we amend the life sentence to reflect that defendant is to be given credit for time served prior to execution of his sentence. See State v. King, 604 So.2d 661, 670 (La.App. 1st Cir.1992). Resentencing is not required. However, we remand the case and order the district court to amend the commitment and the minute entry of the sentencing to reflect that defendant is to be given credit for time served.

CONCLUSION
For the above reasons, defendant's conviction and sentence are affirmed, as amended. The case is remanded with order.
CONVICTION AND SENTENCE AFFIRMED, AS AMENDED. CASE REMANDED WITH ORDER.
NOTES
[1] Voluntary intoxication is a defense only if "the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime." LSA-R.S. 14:15(2).
[2] In the tenth assignment of error, defendant argues that the court erred when it failed to instruct the jury on the defense of involuntary intoxication. See LSA-R.S. 14:15(1). In advancing his claim in the fourteenth assignment that the evidence was insufficient, defendant argues that, because of his intoxicated condition, the state failed to establish the requisite specific intent. See LSA-R.S. 14:15(2).
[3] Although defendant pursued the insanity defense at the trial level, he does not renew the defense on appeal.