671 So.2d 998 (1996)
STATE of Louisiana
v.
Jerome MORGAN.
No. 94-KA-2586.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1996.
*1000 Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for Defendant/Appellant, Jerome Morgan.
Harry F. Connick, District Attorney, Val M. Solino, Assistant District Attorney of Orleans Parish, New Orleans, for Plaintiff/Appellee, the State of Louisiana.
Before CIACCIO, PLOTKIN and MURRAY, JJ.
MURRAY, Judge.
Jerome Morgan was convicted of the second degree murder of Clarence Landry and was sentenced to life imprisonment at hard labor without benefit of parole. He appeal his conviction.

FACTS
Late in the evening of May 22, 1993, Clarence Landry was shot and killed while attending a party at the Howard Johnson's on Old Gentilly Road in eastern New Orleans. Two other attendees were also shot, but survived. At trial, the state presented various students who attended the party and who testified as to one version of how the shooting occurred. The defense presented the testimony of Mr. Morgan and other students, which portrayed a wholly different picture of the shooting.

I. Testimony of prosecution witnesses
Although there were slight variations between the testimonies of the various state witnesses, their version of the events leading to the shooting, and the shooting itself, is summarized as follows:
Clarence Landry, Kevin Johnson, Antonio Bradley, and Harrison Hogan were at the party together for one or two hours prior to the shooting. The four of them, along with Hakim Shabazz, had been dancing and had attracted a crowd of onlookers. Jerome Morgan, along with several other boys, arrived at the party wearing t-shirts. Mr. Morgan and his friends became angry because Clarence Landry and his friends were getting all of the attention. There was a lot of eye contact and possibly some words between the two groups. Clarence and his friends decided to leave the party to avoid a fight.
Once out of the door, Mr. Landry realized that he had left Ms. Adierah Berger, his younger cousin, inside. As he and Kevin Johnson attempted to re-enter the party they were met at the door by two of the boys wearing t-shirts. A fight ensued, and the rest of Mr. Landry's friends came to the rescue, except for Hakim Shabazz, who tried to break up the fight. Suddenly a shot was fired, hitting Rogers Mitchell, one of the boys in a t-shirt, in the leg. Mr. Landry and his friends tried to run out of the door, but more shots were fired. Clarence Landry was shot five times and was pronounced dead at the scene. Hakim Shabazz was shot in the abdomen, but survived. All of the state's witnesses testified that their backs were to the exit door, and that the shots came from within the room where the party was being held. They also testified that the perpetrator fled the scene. The defendant, Jerome Morgan, was not involved in the actual fight.
Uniformed police officers arrived at the party about thirty to forty-five minutes after the shooting[1] and secured the scene by locking the doors and prohibiting anyone from leaving or entering the party. Detective Wayne Tamborella arrived later to investigate the homicide and collect evidence. Eight spent .22 caliber casings were collected at the scene. The police, including Detective Tamborella, interviewed those remaining at the party, approximately sixty people, but none were able to provide any information. The police wrote down the names, addresses, and telephone numbers of all remaining party-goers, and they were released. Jerome Morgan's name was among those listed by the police as remaining after the shooting.
Kevin Johnson, Antonio Bradley and Harrison Hogan provided information to the police at the murder scene and each gave a formal statement at the police station later that night. While Kevin testified that he saw *1001 the shooter, Antonio and Harrison testified that they were looking towards the gunman but did not see his face. Kevin also testified that he and his friends had run away from the hotel after the gunshots were fired, and that the perpetrator ran away at the same time. Kevin chased the perpetrator until he jumped over a fence in a dark alley. He told the officers that the perpetrator's nickname was "J", and he, Antonio and Harrison described the perpetrator as being anywhere from five foot six to five foot eleven inches, approximately seventeen years old, and wearing a white t-shirt, black jeans, and tennis shoes.
On June 3, 1993, Detective Tamborella showed the three witnesses a photographic line-up. Neither Mr. Hogan nor Mr. Bradley made an identification. The detective also concluded that Kevin Johnson had not made an identification. However, after speaking with Clarence's mother, Kevin Johnson stated months later that Detective Tamborella had misunderstood, and that he had chosen appellant's picture from the line-up. At trial, Kevin Johnson explained that when he first saw Jerome Morgan's picture in the line-up, he stated, "oh, it can't be," because he was shocked that someone he used to "rap" with in middle school committed murder.
The photographic line-up was also shown to Hakim Shabazz in August 1993 after he recovered from his gunshot wound. Mr. Shabazz positively identified appellant and gave the police officers Jerome Morgan's name. Based on the identification by Mr. Shabazz, a warrant was issued for Mr. Morgan's arrest. On the day of his arrest, Jerome Morgan gave a statement to Detective Tamborella denying any involvement in the incident and identifying someone named "Glenn" as having done the shooting. Detective Tamborella testified that that was the first time the name "Glenn" had been mentioned in connection with this investigation.

II. Testimony of defense witnesses
The first witness called by the defense was Jeffery Jackson. He testified that he, Jerome Morgan, Rommel Johnson, and Derrick Remble attended the party together, and that it was the other group of boys who wanted to fight. He stated that the shots came from the doorway, not from within the room, and that when the shots rang out, he and Mr. Morgan ran under the D.J. table. He also testified that Jerome Morgan was behind him in line when the detective collected the names and addresses of the party-goers. Finally, he said that he did not see the gunman, only the "fire" from the gun.
On cross-examination, Mr. Jackson testified that people in the neighborhood had told him that Glenn Butler was at the party, and that Glenn was the gunman. He also changed his story and testified that he did see the gunman as he fled, but admitted that he did not tell the police his version of the events.
Next, Rogers Mitchell testified that after he was shot, he ran into the kitchen. He stated that a few minutes after the shooting stopped, Jerome Morgan came into the kitchen, removed his shirt, and attempted to tie it around his leg to stop the bleeding. However, the shirt did not fit, and Rommel Johnson tied a tablecloth around the wounded leg. Mr. Mitchell testified that he did not see who did the shooting.
On direct examination, Rommel Johnson testified that he saw Glenn Butler do the shooting, but did not tell the police of his observations that night. Yet, on cross-examination, he admitted not seeing the shooting and re-emphasized that Jerome Morgan was under the D.J. table during the shooting.
Jerome Morgan and Derrick Remble also testified, corroborating the testimony of the above defense witnesses.

III. Testimony on rebuttal
The state called three rebuttal witnesses: Detective Tamborella, Detective Suarez, and Hakim Shabazz. Of particular importance is the testimony of Detective Suarez. Detective Suarez interviewed Rogers Mitchell at Charity Hospital on the night of the murder. At that time Mr. Mitchell told the detective that he saw the gunman and gave him a detailed description: a seventeen year old black male, approximately six feet tall, slim build, and with gold teeth. He also stated that the gunman was wearing a striped shirt *1002 and a red visor. Notably, at trial Mr. Mitchell testified that he had not seen the gunman. When he was asked about the person wearing the striped shirt and red visor, he replied that he was fighting that person.

DISCUSSION
A review of the record shows no errors patent.
Mr. Morgan's defense counsel assigns as error the trial court's failure to grant a mistrial after the state questioned Detective Tamborella on direct as follows:
Q. Now, after developing Jerome Morgan as a suspect, what did you do?
A. First thing we did was try to obtain the photograph of him to put in a photographic line-up to give to the witnesses.
Q. Where did you go to do that?
A. Like usual, to the police department photo track and juvenile bureau.
Defense counsel: Objection.
The Court: Sustained.
Q. From where did you ultimately obtain the photographs?
Defense counsel: Objection.
The Court: I'm going to sustain that. Did he obtain a photo? Yes or no?
Q. Okay. Did you obtain all of the photographs from the same location?
A. Yes, ma'am.
Defense counsel then moved for a mistrial which was denied by the court without reasons. No request was made for an admonition to the jury.
Mr. Morgan contends that the prosecutor intentionally solicited information concerning the source of the photo to suggest to the jury that he had a prior arrest record. The state argues that since there was no direct reference to a prior criminal record, no prejudice can be established; the jury did not have to conclude Mr. Morgan had previously been arrested merely because the police had his photo on file. In any case, since any inference to this effect was negated by Mr. Morgan's direct testimony that he had never been arrested, the state contends this alleged error is without merit.
Article 770 of the Code of Criminal Procedure states that:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
La.Code Crim.Proc.Ann. art. 771 further provides that when a remark prohibited under Article 770 is made by someone other than a judge, district attorney or court official, the court must admonish the jury if either party requests it and, if the defendant so moves, it "may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
At the time this case was tried, it was per se a substantial violation of a significant right to deny a defendant's motion for mistrial if properly grounded under Article 770. State v. Green, 315 So.2d 763 (La.1975); see also State v. Nuccio, 454 So.2d 93, 102 (La. 1984). However, while this appeal was pending, our Supreme Court handed down the opinion in State v. Johnson, 94-1379 (La. 11/27/95), 664 So.2d 94, in which the per se rule was rejected as inconsistently applied. Instead, as "a trial error, i.e., an error which occurs during the case's presentation to the trier of fact," harmless error analysis now applies. Johnson at p. 15, 664 So.2d at 101. We find no reversible error under either standard of review.
A police officer's unsolicited reference to a defendant's prior criminal activity would not require a mistrial under La.Code *1003 Crim.Proc. art. 770 unless there was a pattern of unresponsive answers or improper intent. State v. Nuccio, 454 So.2d 93, 101 (La.1984); State v. Lee, 618 So.2d 551, 553 (La.App. 4th Cir.), writ denied, 624 So.2d 1222 (La.1993). However, a police officer's statements could be imputable to the state if the prosecutor deliberately elicited inadmissible information from the officer. State v. Madison, 345 So.2d 485 (La.1977); State v. Overton, 337 So.2d 1201 (La.1976); State v. Lepkowski, 316 So.2d 727 (La.1975).
Both the Louisiana Supreme Court and this court have held that reference to "mug shots," "booking photos" or Bureau of Identification ("B of I") photographs would not require the granting of a mistrial under Article 770. See State v. Curry, 390 So.2d 506 (La.1980); State v. Harris, 258 La. 720, 247 So.2d 847 (La.1971); State v. Livas, 527 So.2d 398 (La.App. 4th Cir.1988). Additionally, "(n)o inference that an accused is a bad person can be drawn simply from the fact that the police had, or were able to procure, his photograph," State v. Youngblood, 325 So.2d 250, 251 (La.1975).
Admittedly, the source of the photos used in the line-up was irrelevant, as the trial court attempted to indicate to the prosecutor by suggesting a neutral phrasing of her question. And as pointed out in Judge Ward's dissent in State v. Merrick, 598 So.2d 1184, 1188-89 (La.App. 4th Cir.), writ denied, 608 So.2d 166 (La.1992), such "persistent questioning" can give rise to an inference of improper intent, which would necessitate a mistrial under Article 770. However, the photos themselves were admissible into evidence since identification of Mr. Morgan was a central issue of this case, and there was no reference, either direct or indirect, to any prior arrest or criminal activity by the defendant. Additionally, the photographs do not appear to be from police records, but from a school yearbook; the individuals pictured are wearing ordinary clothing and are seated before a neutral background. Since admission of these photographs was not prejudicial, a mistrial was not mandated under Article 770 by an indirect reference to the source of the photos. And since no admonition was requested, there was no violation of Article 771.
For much the same reasons, the indirect reference to the source of the photographs was harmless; the guilty verdict cannot be attributable to this error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Bourque, 622 So.2d 198 (La.1993). Here, both Hakim Shabazz and Kevin Johnson identified Mr. Morgan as the gunman at the party, and the jury was fully informed of the apparent discrepancy between Mr. Johnson's initial and later identifications. In the face of this evidence and Mr. Morgan's denial of a prior police record, it is clear that a reference to police files as the source of Mr. Morgan's photograph was harmless error.
In his pro se brief, Mr. Morgan contends that the evidence was insufficient to sustain a conviction for second degree murder. He argues that since there is no direct evidence linking him to the shooting and there were many contradictions in the state's case, the overall evidence can not be seen to exclude every reasonable hypothesis of innocence. The contradictions noted include the fact that his name appears on the list of those remaining at the party after the shooting, his own statement to the police that Glenn Butler was the perpetrator, and the recanted non-identification by Kevin Johnson.
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La. App. 4th Cir.1991). Nevertheless, the reviewing court may not disregard its duty to consider whether the evidence is constitutionally sufficient simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution *1004 but must consider the record as a whole because that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, supra; Green, supra.
Mr. Morgan was charged with and convicted of second degree murder. Thus, the state's burden was to prove that he had specific intent to kill or inflict great bodily harm on the victim. La.Rev.Stat.Ann. § 14:30.1. Here, given the number of shots fired into a crowd of people, specific intent to kill or inflict great bodily harm may be inferred from the circumstances. State v. Kennington, 515 So.2d 521, 523 (La.App. 1st Cir.1987). Therefore, the only issue remaining is whether the state proved that Mr. Morgan was the gunman.
Although Mr. Morgan argues that no direct evidence links him to the murder, Hakim Shabazz positively identified him as the perpetrator of the crime and even gave the police his name. The jury was fully informed of Kevin Johnson's initial "non-identification" of the gunman and the circumstances under which he later clarified his first response to Mr. Morgan's photo.
Mr. Morgan argues that the state failed to prove that someone else did not commit the crime, namely, Glenn Butler. Yet, none of the defense witnesses, including Jerome Morgan, actually saw Glenn Butler do the shooting, but learned that he was the gunman through talk in the neighborhood. None of the witnesses went to the police prior to trial and informed them of their version of the events.
The only evidence damaging to the state's case was the fact that Jerome Morgan's name appeared on the list of party-goers compiled after the police arrived at the scene of the shootings. However, testimony indicates that the police did not arrive until approximately thirty to forty-five minutes after the shooting; until then, people were free to come and go from the party. Even though Mr. Morgan and the defense witnesses testified that he remained at the party the entire time, while the gunman fled, it appears the jury chose to believe the version of events as presented by the state. That credibility determination by the jury does not appear to be contrary to the evidence in light of the inconsistencies in the testimony of the defense witnesses as noted previously in the statement of facts. See State v. Vessell, 450 So.2d 938 (La.1984); State v. Cashen, 544 So.2d 1268 (La.App. 4th Cir.1989).
For these reasons, Mr. Morgan's conviction is affirmed.
AFFIRMED.
NOTES
[1] Only Jerome Morgan, testifying on his own behalf, was asked how long it took for the police to arrive.