692 So.2d 1350 (1997)
STATE of Louisiana
v.
Roderick S. WHINS.
No. 96-KA-0699.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1997.
*1351 Richard Ieyoub, Attorney General, Darryl W. Bubrig, Sr., District Attorney, 25th Judicial District, Parish of Plaquemines, Pointe-A-La-Hache, and Gilbert V. Andry, III, Assistant District Attorney, New Orleans, for State.
Timon Webre, Plaquemines Parish I.D.B., Pointe-A-La-Hache, for Defendant.
Before BYRNES, JONES and LANDRIEU, JJ.
LANDRIEU, Judge.
The State charged Roderick S. Whins with four counts of attempted first degree murder (counts 1-4) and one count of aggravated burglary (count 5). He pleaded not guilty to all counts. A jury found him guilty as charged on count 1, guilty of attempted manslaughter on counts 2-4, and guilty as *1352 charged on count 5. Whins filed motions for new trial and in arrest of judgment, which the Trial Court treated as a motion for post-verdict judgment of acquittal. The Trial Court granted the motion as to counts 1-4, but denied it as to count 5. The Trial Judge sentenced Whins to twenty-five years at hard labor on count 5.
Both Whins and the State appealed.

STATEMENT OF THE FACTS
On January 10, 1995, in Port Sulphur, Frederick Ragas saw Whins walking across a field, carrying a shotgun. Whins had dated Mr. Ragas's daughter Elke, but she had broken off the relationship about two weeks earlier. Elke and the two young daughters of her sister Ingrid were sitting on the living room sofa watching television in Mr. Ragas's mobile home. Mr. Ragas told Elke to call the police, and he made sure that the front door to the trailer was locked. Mr. Ragas stood against the door as Whins began banging on it and calling for Elke. She told her father that she did not want to speak to Whins, and he relayed this message to Whins. He also asked Whins to leave. Mr. Ragas and Elke then heard a shotgun blast against the door, and Mr. Ragas felt a jolt up his arm as Whins shot the doorknob which Mr. Ragas was holding in order to keep the door locked. Elke again called for the police. Mr. Ragas told Elke to take the children into the master bedroom, which she did. Whins then shot through the trailer's living room and kitchen windows and struck a light fixture and a ceiling fan. Next, Whins tried to climb through one of the windows he had shot, but Mr. Ragas grabbed the gun. Whins got the gun away from Mr. Ragas, who then ran into another bedroom.
Whins threatened to shoot Mr. Ragas if Elke did not come outside. When Mr. Ragas saw her start to walk out of the master bedroom, he told her to go back in. Mr. Ragas pushed a television against the door when he saw Whins trying to enter. Whins then ran back to the window and pointed the gun at Mr. Ragas, who ran back into the bedroom. Whins was then able to get in through the door. He found Elke and put the gun to her head. He told her to come outside and threatened to shoot her and the two children. So, Elke started to walk out of the trailer with Whins behind her. Mr. Ragas began to wrestle with Whins to get the gun, but in doing so, they both fell through the back door of the trailer.
Deputies arrived at the scene as the two men struggled over the shotgun. Deputy Vaughn ordered the men to drop the gun, but Mr. Ragas gained control of the shotgun. He told the deputy, "Not me. It is him." Whins limped as he ran toward the highway. Deputy Vaughn pursued him for ten to fifteen feet and caught him. The only thing seized from Whins was the gun which contained no shotgun shells, just a spent casing. The deputies found three other spent rounds on the ground outside and shotgun pellets in the ceiling. Detective Buras testified that the gun had to be opened and loaded with a shell each time before it could be shot.

DISCUSSION
A review of the record reveals no errors patent.

THE STATE'S ASSIGNMENT OF ERROR
In its sole assignment of error, the State complains that the trial court erred in setting aside the jury's verdict as to Count 1-4 and argues that there was sufficient evidence of Whin's specific intent to kill.
La.Code Crim. Proc. art. 821(B) provides:
B. A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
Article 821 is the correct vehicle for asserting that the State failed to prove an essential element of the offense. State v. Allen, 440 So.2d 1330 (La.1983). This article tracks the language of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in setting the standard pertaining to *1353 motions for post-verdict judgment of acquittal. State v. Smith, 441 So.2d 739 (La.1983); State v. Voorhies, 590 So.2d 776 (La.App. 3d Cir.1991).[1]
Whins was convicted of one count of attempted first degree murder and three counts of attempted manslaughter. To support a conviction for either offense, the State must prove beyond a reasonable doubt the defendant had the specific intent to kill and the commission of an overt act toward that goal. State v. Bordenave, 93-1682 (La.App. 4th Cir. 8/23/95), 660 So.2d 1207. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow from his act or failure to act. La.Rev.Stat. 14:10(1); State v. Marshall, 94-1282 (La.App. 4th Cir. 6/29/95), 657 So.2d 1106. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Maxie, 93-2158 (La.4/10/95), 653 So.2d 526.
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La.Rev.Stat. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (10/31/94). This is not a separate test from Jackson v. Virginia, but is instead an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984).
La.Rev.Stat. 14:27 provides in part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
Manslaughter is a homicide which would be either first or second degree murder, but the killing is committed in "sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of self-control and cool reflection." La.Rev.Stat. 14:31(A)(1).[2] "Sudden passion" and "heat of blood" are not separate elements of the offense but are mitigating factors which exhibit a degree of culpability less than that present when the homicide is committed without them. State v. Lombard, 486 So.2d 106 (La.1986). Because these are mitigating factors, the defendant must establish them by a preponderance of the evidence. State v. Heck, 560 So.2d 611 (La.App. 4th Cir.1990), writ denied 566 So.2d 395 (La. 1990).
The aggravating circumstances for the attempted first degree murder count were that Whins intended to kill more than one person and/or that he was engaged in the perpetration of an aggravated burglary. La. *1354 Rev.Stat. 14:30(A)(1) & (3).[3] In the instant case, although Whins was also convicted of aggravated burglary, there is no double jeopardy violation because, for the attempted first degree murder charge, the State relied not on the burglary, but on the additional aggravating circumstance that Whins intended to kill more than one person.
Therefore, the remaining issue on the attempted first degree murder charge is whether the State proved beyond a reasonable doubt the aggravating circumstance that Whins had the specific intent to kill more than one person when he fired the shots into the trailer.
When Whins started shooting at the trailer, Mr. Ragas was standing behind a door while Elke and the two children were in the living room. Whins had to have known that there were at least two people inside the trailer because he demanded that Elke come outside and heard her father say that she would not. Elke and her father, however, as well as the two children, were behind protective walls when Whins started shooting, and there was no testimony that any of the Ragases were near the windows into which Whins shot. In fact, Elke testified that she and the two children were in the master bedroom when Whins shot through the windows. Those shots, fired upward, struck a ceiling light fixture and ceiling fan. Shotgun pellets were found in the ceiling. The evidence presented by the State, when viewed in the light most favorable to the prosecution, has not excluded the reasonable hypothesis that Whins fired at the trailer in effort to intimidate his ex-girlfriend into coming outside or that he shot the doorknob in an effort to gain entrance into the trailer.
As to Whins's actions once he was inside the trailer, the evidence presented by the State shows that his gun was empty and that no additional shotgun shells were found on his person when he was arrested. Whins had to load the shotgun with a shell each time he discharged it. In order to find him guilty based on his threats to kill after he entered the trailer, it would have to be inferred that Whins thought he still had ammunition in the gun. Because, however, he had to load it with a shell before firing it and must have done so the previous four times he shot it, he had to have known it was empty.
This evidence was proof of an aggravated assault which is not a responsive verdict, but was not proof of intent to commit first degree murder or manslaughter. La.Code Crim. Proc. art. 814. Therefore, the Trial Court did not err in entering post-verdict judgments of acquittal on counts 1 through 4. This assignment of error is without merit.
WHINS'S ASSIGNMENT OF ERROR
In his sole assignment of error, Whins complains that the trial court erred in denying his motion for a mistrial when the State deliberately elicited testimony of another crime committed by him without complying with the Code of Evidence or State v. Prieur, 277 So.2d 126 (La.1973). Whins argues that the trial court should have declared a mistrial, instead of admonishing the jury to disregard the testimony, when Elke Ragas responded that Whins punched her in the face after she was asked by the prosecutor whether anything had happened between her and Whins in the two weeks between their breakup and the shooting.
The trial court shall order a mistrial when a remark or comment made within the hearing of the jury by the judge, district attorney, or a court official either directly or indirectly refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. An admonition to the jury to disregard the remark shall not be sufficient to prevent a mistrial. La.Code Crim. Proc. art. 770. An impermissible reference to another crime which is deliberately elicited from a witness by the prosecutor is imputable to the State. State v. Madison, 345 So.2d 485 (La. *1355 1977); State v. Merrick, 598 So.2d 1184 (La. App. 4th Cir.), writ denied 608 So.2d 166 (La.1992). A review of Elke's testimony shows that the reference to the punching incident, which would constitute a battery, was deliberately elicited by the prosecutor; hence, it is imputable to the State.
As a prerequisite for the admissibility of evidence of other crimes, the State must, within a reasonable time prior to trial, furnish to the defendant a statement, in writing, of the acts or offenses it intends to offer and describe the same with the general particularity required of an indictment or information. La.Code Evid. art. 404(B)(1). State v. Prieur, 277 So.2d at 130; State v. Williams, 94-0622 (La.App. 4th Cir. 8/23/95), 660 So.2d 919. There is nothing in the record to show that the State filed notice of its intent to use Whins's punching Elke two weeks before the shooting took place. The evidence of this battery, therefore, was inadmissible and a violation of art. 770(2).
Violations of art. 770 are subject to a harmless error analysis when a trial error which occurred during the case's presentation is involved because the error can be quantitatively assessed in the context of the other evidence. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. In the present case, any error was harmless. Had the State given proper notice, the punching incident would have been relevant to the attempted first degree murder counts for which Whins was being tried. But because the Trial Court correctly granted Whins's motion for post-verdict judgment of acquittal on these counts, Whins has suffered no prejudice. This assignment of error is without merit.
Accordingly, the Trial Court's ruling on the post-verdict judgment of acquittal is affirmed, and Whins's conviction and sentence for aggravated burglary are affirmed.
AFFIRMED.
BYRNES, J., dissents.
BYRNES, Judge, dissenting.
I respectfully dissent. I would find that the trial court erred in setting aside the jury's verdict finding the defendant guilty of one count of attempted first degree murder and three counts of attempted manslaughter. I would conclude that there was sufficient evidence that the defendant had specific intent to kill.
In State v. Wisinger, 618 So.2d 923 (La. App. 1 Cir.1993), writ denied, 625 So.2d 1063 (La.1993), the evidence was sufficient to establish that the defendant specifically intended to kill or inflict great bodily harm on more than one person so as to sustain a conviction of first degree murder where the defendant shot at the victim and his wife as the couple answered the door, fired a second shot through the carport door after the victim's wife closed it, and fired a shot through the front door. The defendant persisted in trying to enter the residence while the victim's wife was on the telephone with the sheriff's office, and the first deputy to arrive found the defendant pulling on the carport door with a gun in his hand.
In State v. Guy, 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517, writ denied, 96-0388 (La.9/13/96), 679 So.2d 102, this court found that the evidence was sufficient to support a finding that the defendant had specific intent to kill or inflict great bodily injury so as to support a conviction for second-degree murder, despite the contention that the defendant did not intend to hit the driver of the automobile; an eyewitness testified that he saw the defendant shoot three times at the rear of the automobile that the victim was driving, and it appeared that the defendant simply became irritated when the victim honked his automobile horn and the defendant chose to kill the victim.
In State v. Odom, 511 So.2d 1214 (La.App. 2 Cir.1987), writ denied, 515 So.2d 446 (La. 1987), the appellate court upheld the conviction for attempted second degree murder based on the finding that specific intent to kill the victim was supported by sufficient evidence, showing that the defendant intentionally and repeatedly fired his rifle at the victim's car, hitting it at least three times. One shot struck the center of the rear window, and two struck the trunk.
In State v. Morgan, 94-2586 (La.App. 4 Cir. 3/14/96), 671 So.2d 998, writ denied, 960975 *1356 (La.9/27/96), 679 So.2d 1359, in a prosecution for second-degree murder, this court found that specific intent to kill or inflict great bodily harm could be inferred from circumstances that at least seven shots were fired into a crowd of people. See also State v. Allen, 94 1941 (La.App. 1 Cir. 11/9/95), 664 So.2d 1264, writ denied 95-2946 (La.3/15/96), 669 So.2d 433; State v. Powell, 94 1390 (La. App. 1 Cir. 10/6/95), 671 So.2d 493, writ denied 95-2710 (La.2/9/96), 667 So.2d 529.
In State v. Holley, 528 So.2d 752 (La.App. 1 Cir.1988), writ denied, 536 So.2d 1213 (La. 1989), the evidence supported the finding that the defendant had specific intent to kill sufficient to convict the defendant of attempted first degree murder where the defendant drew his gun and fired two shots at police officers as they entered the room from a distance of approximately ten feet, and a slug was embedded in the ceiling between the doorway and the window.
In State v. Clark, 93-1470 (La.App. 3 Cir. 10/5/94), 643 So.2d 463, writ denied, 94-2715 (La.2/9/95), 649 So.2d 418, evidence that the defendant announced to his niece and to the local police officer that he intended to shoot someone, that he armed himself with a deadly weapon and went to the victim's home, he observed the victim in the home, and he shot her through the window sufficiently established the defendant's specific intent to kill the victim to support the defendant's conviction for second-degree murder.
In the present case when the defendant approached the mobile home, he had a shotgun in his hand. Detective Buras found a gunshot hole in the glass at the top of the screen door, a hole in the front door where the door knob had been blown off, and two holes in the living room window. Pellets were in the wall and had burst the light in the ceiling fan in the living room. Detective Buras testified that the perpetrator shot through the kitchen window and hit a light fixture over the butcher top table in the kitchen. Wadding were found by a little table and in the kitchen close to the butcher top table. the Defendant threatened to kill the inhabitants. By shooting through the doors and the windows, the defendant committed actions which constituted overt acts toward the accomplishment of the goal of killing the inhabitants. He knew that there were more than one person inside. The victim's father was talking to the defendant as he stood behind the metal front door where the defendant aimed and shot. In fact Frederick Ragas felt the jolt up his arm when the defendant shot the doorknob. In viewing the evidence, both direct and circumstantial, the jury could determine that by shooting into the doors and windows, the defendant had the specific intent to kill.
In the present case, the defendant knew of the consequences that one of the bullets could have gone through the doors or windows and ricocheted off an object in the trailer and hit and killed one or more of the inhabitants when he aimed several times in the vicinity of human beings. There was sufficient evidence that the defendant had the specific intent to commit the crimes of one count of attempted first degree murder and three counts of attempted manslaughter. When the defendant specifically had to load his gun after each shot, and he shot at least four times into the trailer, the jury could infer beyond a reasonable doubt that the defendant had the specific intent to kill so that the trial court erred in setting aside the jury's verdicts.
The majority determined that the defendant was not prejudiced by the trial court's denial of a mistrial based on the claim that the State deliberately elicited testimony of the prior incident where Elke Ragas responded that the defendant had punched her two weeks before the shooting. The majority found harmless error because the trial court granted the defendant's motion for post-verdict judgment of acquittal on the attempted first degree murder counts. I would find harmless error because the defendant received a fair trial.
In State v. Brunet, 95 0340 (La.App. 1 Cir. 4/30/96), 674 So.2d 344, writ denied, 96-1406 (La.11/1/96), 681 So.2d 1258, the appellate court found that the victim's testimony that she and the defendant had an argument concerning allegations that she reported him to his parole officer for carrying a weapon was probative on issues of intent and motive, in an attempted murder prosecution, and was *1357 not an improper reference to the defendant's other crimes.
In the present case, the evidence established that the defendant was the perpetrator who reloaded the shotgun and shot at least four times into the doors and windows of the motor home when he knew there were more than one person present in the trailer. When the trial court admonished the jury rather than grant a mistrial, any error was harmless because the evidence of the prior battery surely did not attribute to the jury verdicts. I would find that the defendant was not deprived of a fair trial.
NOTES
[1] Under Jackson v. Virginia, the evidence, viewed in the light most favorable to the prosecution, must be sufficient for a rational juror to find that the State proved every essential element of the offense beyond a reasonable doubt.
[2] The jury instructions defining manslaughter did not include La.Rev.Stat. 14:31(A)(2), which provides that a manslaughter is a homicide committed without intent to cause death or great bodily harm when the offender is engaged in the commission of a felony not enumerated in either La.Rev.Stat. 14:30 or 14:30.1 or an intentional misdemeanor directly affecting the person.
[3] The bill of information does not set forth the aggravating circumstances for the attempted first degree murder counts, but, in the charge to the jury, the Trial Court set forth the aggravating circumstances as specific intent to kill more than one person, Whins was engaged in the perpetration of an aggravated burglary, and specific intent to kill a victim under the age of twelve years.