HIGHTOWER, Judge.
A jury found defendant, Ardie A. Brown, guilty as charged on three counts of armed robbery, violations of LSA-R.S. 14:64. After presenting its case at trial, the state dismissed a fourth count which also alleged the same crime. Concurrent sentences of 30 years each, without benefit of probation, parole or suspension of sentence, resulted as to Counts 1 and 2. A 15 year sentence, likewise without benefit of probation, parole or suspension of sentence, but to run consecutively to the other two, was imposed on Count 3.
Defendant now appeals, designating three purported errors. The third assignment of error, alleging ineffective assistance of counsel, has not been briefed or argued and, hence, is considered abandoned.[1] URCA 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978). For the reasons hereinafter expressed, we affirm.
Assignment of Error No. 1
Defendant contends insufficient evidence was produced to support his conviction. More specifically, it is argued that the evidence fails to identify defendant as the perpetrator of the offenses. As disclosed below, this assignment of error lacks merit.
Of course, in analyzing such a claim, the court must determine whether the evidence, viewed in the light most favorable to the prosecution, is sufficient for a rational trier of fact to conclude the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Also, the circumstantial evidence rule, contained in LSA-R.S. 15:438, provides that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” However, that rule does not establish a stricter standard of review than the reasonable juror’s reasonable doubt formula, but, rather, provides a helpful methodology for its implementation in cases hinging on the evaluation of circumstantial evidence. State v. Green, 508 So.2d 602 (La.App. 2d Cir.1987).
A.
Counts 1 and 2 concern the nighttime robbery of two workers at the Modern Materials Warehouse on August 23, 1988. The employees, Freddie Neal and Sharon Carter, were confronted that evening by an armed individual who forced them to turn over their money. However, because his face was covered, the robber was not positively identified by his victims.
Neal testified that a black male, approximately six feet in height and of light complexion, came from outside the building to jump up into the warehouse and demand his money and that of his co-worker, Ms. Carter. The intruder wore dark pants, a checkered shirt, and dark gloves, and was armed with a dark-colored .22 caliber revolver that had a long barrel and rusty cylinder. Neal described a winter cap or *250 ski mask being over the gunman’s face, with a curl cap also on the top of his head.
In response to the offender’s demand for money, Neal relinquished a wallet containing three $1 bills and Ms. Carter stated that her money was in a purse located at the other end of the warehouse. After Neal was forced to call for the other workers present to come forward, which they failed to do, of course, both he and Ms. Carter were escorted at gunpoint to her purse. Neal then was placed behind an oven in a separate room, where he remained until police officers were present and had taken defendant into custody.
Ms. Carter similarly testified that an armed man jumped, from ground level, onto the concrete floor inside the warehouse’s freight door. Describing him as about six feet tall and of medium build, Ms. Carter recalled his head being covered with a shower cap and his attire being dark pants, dark shoes, and a tan multi-lined shirt. Also, the robber’s face was obscured by what Ms. Carter perceived as a leotard-like material, and his weapon was said to be a silver revolver with rust on it.
Corroborating the testimony of Neal, Ms. Carter recounted her explanation to the gunman that her purse was in another section of the warehouse. After being required to move to that location, where Neal was forced behind the oven, she relinquished her money, $22 consisting of two $10 bills and two $1 bills. Ms. Carter complied with the gunman’s demand for the money even though, upon reaching her purse, she observed police officers outside.
Detective Rick Fisher of the Monroe Police Department testified that he responded to a “robbery in progress” call at the warehouse. Arriving at the scene, he observed a black male, dressed in a brown plaid shirt, white shoes, and bluish-gray slacks, holding a revolver on a white female. Despite Fisher’s admonitions to halt, the gunman ran to the rear of the warehouse, where he was arrested outside by Fisher’s fellow officer, David Ray Auger.
Soon after the arrest, Auger removed from defendant’s person a wallet containing three $1 bills and a check cashing card bearing Neal’s name. In addition, a $10 bill and two $1 bills were found on the ground in front of defendant. Fisher located a .22 revolver approximately ten feet away from the spot of arrest. Another $10 bill, as well as a clear plastic shower cap and a black stocking, were discovered within six feet of the door where defendant exited the warehouse. After being taken to the station by Auger, defendant told Fisher: “You caught me. I did it.”
Officer Auger recalled apprehending defendant at the rear of the warehouse and informing him of his rights. At the time of arrest, defendant was attired in a brown plaid flannel shirt and bluish looking slacks, but it was soon discovered that he also wore another set of clothing underneath, viz., white casual shorts with a bur-gandy tank top. Auger testified that at that time defendant stated, “You have got me.” After being transported to the station, defendant congratulated Auger for apprehending him and acknowledged, “You’ve got me on this one but I don’t know nothing about any other ones.... ” Also, Auger identified defendant in court as the individual whom he had arrested.
Finally, Det. Myron L. Smith testified that defendant, after arriving at the station, conceded having been caught.
The foregoing discussion clearly reveals that the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was the gunman who robbed Neal and Ms. Carter. The description of the robber's clothing given by the victims sufficiently coincides with the police officers’ recollections of defendant’s outer attire when he was arrested. While fleeing from the warehouse, defendant was carrying Neal’s wallet, complete with the three $1 bills which had been taken in the robbery. Likewise, $22, in the exact denominations Ms. Carter described being taken, was found near the spot of defendant’s arrest, as was a .22 revolver. In addition, both Neal and Ms. Carter testified at trial that defendant was of the same general height and build as their assailant. Finally, defendant made several incrimina‘ting statements to the authorities.
*251 B.
Count 3 involves the robbery of an attendant at a convenience store, the Cracker Barrel, during the early morning hours of August 16, 1988. The attendant, Robert Baker, testified that shortly after midnight an armed man, whose face was covered with what first appeared to be a bandanna, entered the store and jumped over the counter. Striking Baker on the left side of the head with a dark colored revolver, the gunman demanded to be given money from the cash register. The victim complied, handing over the money and a paper bag. Quickly jumping back over the counter, the gunman, while exiting the store, reached for some Winston cigarettes on a two-level display rack near the cash register. Because he attempted to grasp an unmanageable quantity, two packages fell on the floor of the store’s main aisle.
Baker also recalled that his assailant, a man approximately six feet tall and of slender build, was wearing a brown long-sleeved sweater and khaki trousers. No facial features were visible, since the gunman was covered from head to toe except for not wearing gloves, but the attendant noticed a black skin color. In the courtroom, Baker also observed that defendant and the robber were of “reasonably” similar build and height.
Police officers arrived at the store soon after the robber’s departure and were apprised of the details of the crime. Baker particularly informed the officers that, from the display rack accessible to customers, the gunman had grabbed several cigarette packages but was unable to carry them all. The two Winston packages lying on the floor were dusted for fingerprints by Det. Fisher in Baker’s presence. A latent left thumb print was discovered.
Soon after the initial robbery report, Officer Auger patrolled the streets behind the store in search of the gunman. At that time he found nothing; however, a few hours later, at approximately 3:28 a.m., he again patrolled the area. He then discovered on the street immediately behind the store, in close proximity to each other, a baseball type cap, a stocking cap, a beige or brown pull-over sweater, and two packs of Winston cigarettes. A latent fingerprint from a right middle finger was subsequently taken from those packages of cigarettes.
At trial, Det. Fisher and Officer Jim Gregory were qualified and accepted as experts in latent fingerprint analysis and identification. A comparison was made of the fingerprints found on the cigarette packages and defendant’s prints taken at the jail following his arrest for the warehouse robbery. Both experts positively identified both latent prints as being those of the defendant.
As previously mentioned, the store attendant was unable to see the robber’s face, precluding a visual identification of the assailant. Defendant argues that the fingerprints only serve to demonstrate that he had been inside the store at some time. Hence, it is contended that the evidence is insufficient to support the conviction.
Fingerprint evidence standing alone is sufficient to sustain a conviction if, from the circumstances of the fingerprint, the finder of fact can determine that guilt is the only reasonable hypothesis. State v. Davenport, 445 So.2d 1190 (La.1984); State v. Wade, 467 So.2d 1191 (La.App. 2d Cir.1985). Circumstantial evidence supports a conviction when, upon viewing that evidence in the light most favorable to the prosecution, a rational juror could have concluded that the alternative hypothesis of innocence was not sufficiently reasonable to preclude a finding of guilt beyond a reasonable doubt. See State v. Captville, 448 So.2d 676 (La.1984); State v. Mosely, 475 So.2d 76 (La.App. 2d Cir.1985).
As mentioned previously, after his arrest for the warehouse robbery, defendant had gratuitously protested his innocence of “any other ones.... ” More importantly though, it is certainly not unreasonable to reject a supposition that defendant had previously entered the store and at that time proceeded to handle different packages of Winston cigarettes with different hands and then return those items to the rack, and that those same cigarette packages were subsequently left by the robber on *252 the floor and in the street behind the store, all apparently without any fingerprints other than defendant’s being on the four packages found. Faced with such a hypothesis, it cannot be said that a rational juror could not find guilt beyond a reasonable doubt.
Assignment of Error No. 2
Defendant argues that the sentence imposed is excessive. We do not agree.
The test imposed by the reviewing court in determining excessiveness of a sentence is two-pronged. First, the record must show that the trial court applied the guidelines set forth in LSA-C.Cr.P. Art. 894.1. Compliance with that article, however, has been acknowledged by this defendant. Indeed, the record reveals adequate consideration of the guidelines. The first prong of the test, then, is not an issue in this case.
Under the second prong of our analysis, we must determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or amounts to nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). It is well settled that the sentencing judge is given wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Walker, 516 So.2d 1273 (La.App. 2d Cir.1987).
At sentencing, the trial court noted that defendant possessed a juvenile record, although it formed no basis for the sentence. Also, while in high school in 1975, defendant was charged with two counts of armed robbery and, following a guilty plea to two counts of attempted armed robbery, received two consecutive ten year sentences. Hence, he is now classified as a second felony offender. A year following his 1986 release from prison, defendant was convicted of disturbing the peace.
In addition, the crime committed, armed robbery, is, as the trial court observed, a very serious offense. Defendant’s completely inexcusable conduct threatened severe harm to the victims, and, in fact, the store attendant was struck in the head. Finally, a total of 297 years in prison was possible had maximum and consecutive sentences been imposed. Consequently, defendant received considerable leniency.
CONCLUSION
For the foregoing reasons, defendant’s convictions and sentences are affirmed.
AFFIRMED.

. Defendant's attorney on appeal was not trial counsel. However, in a footnote at the beginning of his brief, appellate counsel states that, upon closer inspection, he finds the record un-supportive of a claim of ineffective assistance. In addition, such an issue, as counsel noted, is more properly raised by application for post-conviction relief. State v. Prestridge, 399 So.2d 564 (La.1981).