773 So.2d 794 (2000)
STATE of Louisiana
v.
Telly GUILLORY.
No. 00 00386-KA.
Court of Appeal of Louisiana, Third Circuit.
November 2, 2000.
*796 Paula Corley Marx, Louisiana Appellate Project, Counsel for Telly Guillory, Defendant/Appellant.
Earl B. Taylor, District Attorney, 27th J.D.C., Counsel for State of Louisiana, Plaintiff/Appellee.
Telly Guillory, Louisiana State Penitentiary, Pro se, Defendant/Appellant.
(Court composed of Chief Judge NED E. DOUCET Jr., Judge OSWALD A. DECUIR, and Judge ELIZABETH A. PICKETT.)
PICKETT, Judge.

FACTS
On May 13, 1993, the St. Landry Parish District Attorney filed a bill of information against the Defendant, Telly Guillory, charging him in count one with unauthorized use of a movable valued in excess of $1,000.00, a violation of La.R.S. 14:68, and in count two with simple burglary, a violation of La.R.S. 14:62.[1] The Defendant entered a plea of not guilty.
After trial on May 17, 1994, a six-member jury found the Defendant guilty as charged on count one and guilty of the responsive verdict of attempted simple burglary on count two. On August 12, 1994, the district court sentenced the Defendant to six years imprisonment at hard labor for his conviction of attempted simple burglary, to be served consecutively to any other sentence the Defendant was presently serving, and three years imprisonment for his conviction of unauthorized use of a movable valued in excess of $1,000.00, to run concurrent with the six-year sentence.[2]
After the district court and this court each twice denied the Defendant's motions for an out-of-time appeal, the Louisiana Supreme Court instructed the district court to grant the Defendant an out-of-time appeal. State ex rel. Guillory v. State, 99-0400 (La.7/2/99); 745 So.2d 627. On July 12, 1999, the district court granted the Defendant an out-of-time appeal. The Defendant now appeals his convictions, asserting two assignments of error through counsel and one assignment of error pro se.
On the early morning of March 25, 1993, Irving Kerstein, owner of Louis Wright Department Store in Eunice, Louisiana, reported his 1992 Ford extended cab pickup truck missing. Kerstein testified that he had purchased the truck new and that the truck was worth well over $1,000.00. Also missing were Kerstein's wallet and his set of keys containing his house, truck, and store key, as well as the alarm key for the store.
*797 Kerstein was able to change the locks at his store that day, but not the alarm system. Shortly over an hour after Kerstein reported his truck missing, the police located the truck parked in a parking lot at a nursing home about a mile from Kerstein's store. No keys were found with the truck.
Lieutenant Donald Smith removed latent fingerprints from the truck for evaluation at a crime lab. The clearest print he obtained was a hand print on the outside of the truck, approximately ten inches above the driver's side door handle.
Lieutenant Richard Brickley started to patrol the area around the Louis Wright Department Store after being notified that Kerstein's store key was taken along with the truck. At approximately 1:30 a.m. on March 26, 1993, Lieutenant Brickley saw the front glass door of the clothing store was smashed. As he radioed for assistance, he saw someone wearing a pullover sweater with the hood on come out of the door through the broken glass and run away. Lieutenant Brickley did not see the person's features, and the person stayed stooped over and did not look at Lieutenant Brickley.
By car, Lieutenant Brickley unsuccessfully chased the person he saw, returning to secure the store less than five minutes later. Kerstein went to the store that night and found glass on the ground, items in disarray, and clothing missing.
The police found a pile of clothing with Louis Wright tags behind an apartment building a block and a half away from the store.
Shortly after 2:00 a.m. that morning, Sergeant Patrick Green saw the Defendant coming from the alley right behind the Louis Wright Store. The Defendant was walking with his back toward Green, and when he saw the police unit, he looked like he would run but instead he slipped and fell. When asked by Green where he was coming from, the Defendant first said he was coming from a convenience store which was closed, and then said he was coming from an unidentified friend's house. He said he was going to a friend named Eva's house. Believing the Defendant was intoxicated because of the way he smelled and his slurred speech, Green arrested the Defendant for public intoxication and transported him to the police station.[3] Lieutenant Brickley testified that the Defendant was definitely not the person he saw coming out of the clothing store.
Donald Ashford, a salesperson at the Louis Wright Store, testified that he was called to the store that night and saw that the alarm system located outside of the store entrance had been turned off. Ashford testified that the clothes taken were mostly men's clothing in a particular line of clothing and in large sizes. He identified the clothing as belonging to the store and said that the clothing taken was more than an armful and worth between three to five thousand dollars. He believed everything was recovered. Ashford testified that he had seen the Defendant in the store several times in the weeks before this incident.
Meanwhile, Sergeant Charles Gauntt located several shoe prints on the larger pieces of glass which had fallen inside the store. He found one complete print and several partial prints, as if the glass had been stepped over several times. Gauntt sent the Defendant's Nike tennis shoes, along with the pieces of glass showing shoe prints, to the Acadiana Crime Lab for comparison.
Chris Henderson, a chemist with the Acadiana Crime Lab, provided expert testimony in shoe print identification. After comparing the shoe prints found on the pieces of glass inside the Louis Wright Store to prints made by the Defendant's tennis shoes taken the night of his arrest, Henderson concluded, without a doubt, that both the Defendant's left and right *798 shoes made the prints found on the glass. He also found "fresh" glass particles embedded in the Defendant's shoes. Henderson stated that the prints he analyzed were made by someone stepping on the glass, not someone having kicked the glass to shatter it.
Sergeant Gauntt testified as an expert in fingerprint identification. Gauntt stated that the characteristics of fingerprints and palm prints are the sameno two people have the same prints. Gauntt testified that the palm print removed from Kerstein's truck had at least twelve points of comparison with the Defendant's left palm print. Finding this, he then sent the prints to the crime lab for verification. Sergeant Gauntt determined that the Defendant's palm print was on Kerstein's truck.
Carol Richard, a latent fingerprint analyst with the Louisiana State Police, testified as an expert in her field. She analyzed the print removed from Kerstein's truck and the Defendant's prints and also concluded that the prints matched. A few days after receiving Richard's confirmation on the fingerprint evidence, Lieutenant Brickley questioned the Defendant about the truck, and the Defendant denied ever being around the truck.
The Defendant neither testified nor put forth a defense.

ASSIGNMENT OF ERROR NO. 1:
In his first assignment of error, the Defendant argues that the evidence at trial was insufficient to support his conviction.
The standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983).
"Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, with the intent to commit a felony or theft therein ..." La.R.S. 14:62. A person attempts to commit simple burglary when he has the specific intent to commit the offense and does or omits an act for the purpose of and tending directly toward accomplishing his object. La. R.S. 14:27. "Unauthorized use of a movable is the intentional taking or use of a movable which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the movable permanently." La.R.S. 14:68.
The Defendant argues that the evidence presented at trial failed to connect him with the crimes for which he was convicted. In other words, the Defendant does not dispute that these crimes occurred; he contends the State failed to exclude the possibility that another person committed the crimes. In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable possibility of misidentification in order to carry its burden of proof. State v. Long, 408 So.2d 1221 (La.1982).
The evidence against the Defendant included his fingerprints and shoe prints found at the scenes, and other circumstantial evidence. The Defendant accurately argues that Lieutenant Brickley's testimony was that the Defendant was definitely not the individual he saw exiting the Louis Wright Store. The State's theory at trial and in this appeal, however, is that the Defendant did not act alone in the burglary. Hence, that Lieutenant Brickley did not identify the Defendant is not as significant as the Defendant claims.
Fingerprint evidence alone can be sufficient to convict a defendant. Since palm prints are as unique to an individual as fingerprints, they too can be sufficient *799 to support a conviction, depending on the surrounding circumstances. See State v. Maxie, 614 So.2d 1318, 1322 (La.App. 3 Cir.1993) and State v. Jeter, 609 So.2d 1019 (La.App. 2 Cir.1992), writ denied, 93-0655 (La.3/30/95); 651 So.2d 856.
In State v. Brown, 556 So.2d 248 (La. App. 2 Cir.1990) (citation omitted), the court recognized:
Fingerprint evidence standing alone is sufficient to sustain a conviction if, from the circumstances of the fingerprint, the finder of fact can determine that guilt is the only reasonable hypothesis. State v. Davenport, 445 So.2d 1190 (La.1984); State v. Wade, 467 So.2d 1191 (La.App. 2d Cir.1985). Circumstantial evidence supports a conviction when, upon viewing that evidence in the light most favorable to the prosecution, a rational juror could have concluded that the alternative hypothesis of innocence was not sufficiently reasonable to preclude a finding of guilt beyond a reasonable doubt.
Id. at 251.
In State v. Cornelius, 539 So.2d 919 (La.App. 4 Cir.1989) (citations omitted), the court noted:
When, as in the case at bar, the sole evidence of a defendant's unauthorized entry at the time of the burglary is fingerprints, a jury can reasonably find the defendant guilty beyond a reasonable doubt if the State also presents evidence which reasonably excludes the hypothesis that the prints were impressed at a time other than that of the crime.
Id. at 921.
In the instant case, neither of the Defendant's convictions rests solely upon fingerprint or shoe print evidence, though undoubtedly this evidence was the strongest evidence against the Defendant. The State presented other adequate circumstantial evidence on each conviction.
On the Defendant's unauthorized use of a movable conviction, Kerstein, the owner of the truck, testified that his truck was missing, denied giving anyone permission to use his truck, and established the value of the truck exceeded $1,000.00. The State provided further testimony from two experts matching the Defendant's palm print to the print found on Kerstein's truck. Although no evidence established the time that the palm print was made on Kerstein's truck, the police officers testified that a few days after his arrest, the Defendant denied ever being around the truck. Furthermore, the Defendant did not live near Kerstein; his address at the time of his arrest was Basile, Louisiana. This evidence would seem to sufficiently reduce the possibility that the Defendant inadvertently touched the truck.
On the attempted simple burglary conviction, the State provided expert testimony which positively matched the Defendant's shoe prints with shoe prints found on glass shattered inside the store. The State also established the Defendant's presence both near the store and the pile of clothing, approximately forty minutes after the police secured the crime scene, with what was arguably an unconvincing explanation of his whereabouts, notwithstanding that he was intoxicated. Expert testimony established the existence of glass particles on the Defendant's shoes.
Claiming the State failed to establish the time the prints were made on the glass, and citing State v. Jacobs, 572 So.2d 1140 (La.App. 1 Cir.1990), the Defendant asserts such evidence is necessary because the store was unsecured for four minutes when Lieutenant Brickley chased the person he saw exiting the store. Whether the Defendant entered the store before or after Lieutenant Brickley saw another person leave the store should be of no moment. The evidence showed that the prints were made on the pieces of glass after the door was broken and once the glass was on the inside floor of the store, not as it was perhaps kicked in. The evidence further established, and the Defendant does not dispute, that merchandise was stolen from the store that night.
*800 Moreover, the evidence linking the two crimes for which the Defendant was convicted is circumstantial, yet strong. The Louis Wright Store was burglarized approximately nineteen hours after Kerstein's truck, along with his keys, was discovered missing. The keys were not found with the truck. The intruder at the store apparently used the alarm key to deactivate the alarm system which Kerstein had been unable to alter, but had to break the front door for which Kerstein had been able to change the locks. Probably most important, the Defendant's palm print was found on Kerstein's truck, while his shoe print was found inside the Louis Wright Store.
The Defendant correctly notes that to establish guilt of attempted simple burglary, the state must show that the defendant had the specific intent to commit a felony or theft at the time of the burglary. State v. Walker, 328 So.2d 87 (La.1976). La.R.S. 14:10 defines specific criminal intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
In the instant case, the State has presented circumstantial evidence sufficient to show that the Defendant had a specific intent to commit theft. Even assuming the Defendant was somewhat intoxicated when he was found, he provided an inconsistent explanation of his whereabouts, which did not include an acknowledgment that he had entered the Louis Wright Store. Moreover, clothing had indeed been stolen from the Louis Wright Store, where the Defendant's shoe prints were discovered, that night. These facts indicate the requisite specific intent of the Defendant.
In State v. Marcello, 385 So.2d 244 (La. 1980), cited by the Defendant, the court reversed the defendant's conviction for attempted simple burglary, finding the absence of evidence of specific intent. In that case, however, the court specifically remarked about the defendant's consistent explanation for his presence in a building, as well as the absence of a report of anything missing from the building. Thus, Marcello is easily distinguished from the present case.
Particularly considering the strength of the palm print and shoe print evidence, the evidence presented at the Defendant's trial is sufficient to have allowed the jury to find that the State established beyond a reasonable doubt the elements of unauthorized use of a movable valued in excess of $1,000.00 and attempted simple burglary. The State further negated any reasonable possibility of misidentification of the Defendant notwithstanding that the State acknowledges someone other than the Defendant was seen running from the store. Evaluating the evidence in the light most favorable to the prosecution, the Defendant provided no sufficiently reasonable alternative hypothesis such that a rational juror could not have found proof of guilt beyond a reasonable doubt. See State v. Juluke, 98-0341 (La.1/8/99); 725 So.2d 1291. The evidence, taken as a whole, supports the Defendant's convictions. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2:
In his second assignment of error, the Defendant contends that the district court erred by denying a defense motion for mistrial made after the defense claimed the jury heard testimony of an inadmissible other crime. The Defendant claims that the State's questioning implied that the Defendant entered Kerstein's home to steal the keys to take the truck and accomplish entry into the store. The State responds that the testimony from Kerstein that the keys to his truck and business were taken out of his residence is res gestaean integral part of the crimes for which the Defendant was being tried and, as such, was not inadmissible evidence of other crimes.
The disputed portion of the State's questioning of Kerstein was:

*801 Q. You said your keys, the last time you saw them, were in a place that you'd normally put your key in your house?
A. Yes, sir.
Q. And the keys to your truck with the key to the store and the alarm on it?
A. Yes.
Q. Evidently these were taken from your home the same night that your truck was taken?
A. Yes.
Q. Had you left your house for any reason that night?
A. Well very often I may step out without locking my door. Sometimes I'll make a quick run to the grocery store. I don't know what I did, but I was very careless about locking my door.
Q. Back then you would leave your house unlocked?
A. Unlocked, yes. The door shut, but unlocked.
Q. So if you had left your house that night for whatever reason, as you say you were in the habit of doing, somebody could have gone in your house, gotten the key and your wallet, and taken your truck?
The district court, at this point, removed the jury from the courtroom at defense counsel's request. Defense counsel motioned for a mistrial based on the State's questions concerning another crime. The district court denied the motion for mistrial.
La.Code Evid. art. 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it plans to use at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. (Emphasis added).
According to La.Code Crim.P. art. 770, "... a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to ... another crime committed or alleged to have been committed as to which evidence is not admissible." This article does not apply where the reference involves an integral part of the act being testified aboutthe res gestae of the act. State v. Evins, 626 So.2d 480 (La.App. 3 Cir.1993).
The State argues that Kerstein's testimony that the keys to his truck and business were taken out of his residence is res gestae because the taking of the keys is an integral part of the attempted simple burglary and the unauthorized use of a movable charges. The State explains that any reference to the Defendant's entry into Kerstein's house was not to show he committed another crime, but to help complete the story at trial.
Explaining the res gestae exception, the Louisiana Supreme Court, in State v. Brewington, 601 So.2d 656 (La.1992) stated:
This court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. State v. Boyd, 359 So.2d 931, 942 (La.1978); State v. Clift, 339 So.2d 755, 760 (La. 1976). In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a *802 bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. McCormick, Law of Evidence 448 (2d ed.1972). The concomitant other crimes do not affect the accused's character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. 1 Wigmore, Evidence Sec. 218 (3d ed.1940). State v. Haarala, 398 So.2d 1093, 1097 (La.1981).
Id. at 657.
More direct references to another crime than that found in the instant case have been found by courts as part of the res gestae. For example, in State v. Morris, 96-1008 (La.App. 1 Cir. 3/27/97); 691 So.2d 792, the jury heard a tape at trial on which a detective said that the defendant was being charged with aggravated rape and theft of the victim's vehicle. At his rape trial, the defendant argued that the reference to charging him with the theft was an improper reference to another crime. The court ruled the taking of the victim's vehicle was part of the res gestae.
In a situation somewhat similar to the instant case, in State v. Taylor, 96-320 (La.App. 3 Cir. 11/6/96); 683 So.2d 1309, writ denied, 96-2828 (La.6/20/97); 695 So.2d 1348, the defendant complained the lower court erred in overruling defense counsel's objection to a police officer's testimony that the defendant knocked him over before turning toward the victim. The defendant was not being tried for hitting this police officer. The court noted:
The evidence at issue clearly involves an integral part of the offense. The testimony shows the entire incident was brief; as soon as Officer Stelly identified himself as a policeman, Taylor set the car in motion, knocking Officer Stelly down. Immediately, the defendant turned the car toward Officer Mosely and accelerated. Chronologically, Taylor's actions form a brief but continuous event. Without the testimony at issue, it would have appeared that Officer Stelly identified himself as a policeman, then Taylor immediately sped toward Officer Mosely. This is untrue, and might have confused the jury.
Id. at 1315.
In the instant case, the State's questions to Kerstein were aimed at establishing the link between the simple burglary charge and the unauthorized use of a movable charge through the set of keys. The Defendant's possession of the set of keys was at issue, not how he came to possess the keys.
As the court stated in State v. Colomb, 98-2813 (La.10/1/99); 747 So.2d 1074:
The test of integral act evidence is therefore not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct but whether doing so would deprive its case of narrative momentum and cohesiveness, "with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict." [Old Chief v. United States, 519 U.S. 172, 186, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997).]
Id. at 1076.
Obviously, the indirect reference to the Defendant's entry into Kerstein's home is more closely related in time to the offense of unauthorized use of a movable than to the attempted simple burglary. Nevertheless, the evidence established as to the attempted simple burglary is so strongly linked to possession of the particular set of keys that the Defendant's possession of those keys arguably becomes an integral part of the offense of simple burglary even though the burglary occurred hours after the unauthorized use of a movable. The State's case would not have made sense *803 had the State not established the Defendant's possession of the set of keys.
Furthermore, the court held in State v. Jackson, 625 So.2d 146 (La.1993) (citations omitted):
We find that the time between the other crimes evidence and the offense charged is but one factor to be considered when balancing probative value, prejudicial effect and relevancy. Length of time between the offenses should not exclude otherwise admissible evidence unless the lapse strips the testimony of probative value. While there must be some connexity between the crime charged and the other acts or crimes, the mere passage of time will not necessarily defeat admissibility. However, such a determination must be made on a case by case basis taking into account the peculiar facts of every individual case with much discretion given to the trial judge.
Id. at 151.
Even the time lapse between the Defendant's acquisition of the set of keys and the attempted simple burglaryapproximately twenty-four hoursis not prohibitive as res gestae under the jurisprudence. In State v. Bilbo, 97-2189 (La.App. 1 Cir. 9/25/98); 719 So.2d 1134, writ denied, 98-2722 (La.2/5/99); 737 So.2d 747, the court held admissible the evidence the state sought to be introduced as res gestae involving other crimes which occurred six days before the crime for which the defendant was being tried.
In State v. McGuire, 577 So.2d 1120, 1122-23 (La.App. 1 Cir.), writ denied, 581 So.2d 704 (La.1991), the court held that evidence of the murder defendant's escape from prison in another state twelve to nineteen hours before meeting the victim was admissible as an integral part of the subsequent murder and robbery of the victim.
In State v. Edouard, 512 So.2d 579, 581-83 (La.App. 3 Cir.1987), the defendant was charged with and convicted of burglary of an inhabited dwelling where the only items stolen were the victim's bank book and some bank documents. The defendant was apprehended two days after the burglary when he attempted to cash a check drawn on the victim's name. The court allowed witnesses to testify about the defendant's apprehension which included implication of the crime of forgery or possession of stolen property, noting that the evidence constituted part of the res gestae of the crime.
The Defendant further complains about the State's additional reference to this "other crime" in closing argument. The only such reference is in the State's attorney's statement: "He knew what he had to dowatch Mr. Kerstein, went over there, stole his keys, stole his truck, and used those keys to try to get in that store." The defense voiced no objection to this fleeting reference, and even had they done so, the reference actually demonstrates the State's argumentthat the Defendant's possession of the keys, not how he acquired the keys, was the crucial link in the chain of proof.
The Defendant also implies that the State should have notified him that it intended to use evidence of another crime and the court should have held a hearing on the issue in accordance with State v. Prieur, 277 So.2d 126 (La.1973). However, when the other crimes evidence forms an integral part of the crime, as it does in this case, no Prieur notice is required. State v. Texada, 99-1009, p. 29 (La.App. 3 Cir. 2/2/00); 756 So.2d 463, 485, citing State v. Broussard, 95-792 (La.App. 3 Cir. 12/6/95); 664 So.2d 835, 838.
There is no error in the district court's denial of the Defendant's motion for mistrial.

PRO SE ASSIGNMENT OF ERROR NO. 1:
In his sole pro se assignment of error, the Defendant claims to have been denied effective assistance of counsel when trial counsel failed to request a jury instruction *804 on the defense of intoxication provided for in La.R.S. 14:15.[4] The Defendant argues that had the jury been instructed on the defense of intoxication, it could have found that he lacked the specific criminal intent required for attempted simple burglary.[5]
The State responds only that an appellate court cannot review a pro se assignment of error which is unrelated to counsel's assigned errors when the defendant is represented on appeal. Courts, however, are required to accept and consider post-verdict pro se filings from represented defendants. State v. Melon, 95-2209 (La.9/22/95); 660 So.2d 466.
An ineffective assistance of counsel assertion is more properly raised in an application for post-conviction relief, rather than in an appeal. See State v. Burkhalter, 428 So.2d 449 (La.1983). This enables the district court judge to order a full evidentiary hearing on the matter. State v. Seiss, 428 So.2d 444 (La.1983). However, where the record contains evidence sufficient to decide the issue, and the issue is raised on appeal by an assignment of error, it should be considered. Seiss.
In this case the record contains sufficient evidence to decide the issue presented. The only evidence on intoxication came from one arresting officer whose testimony was not developed much further than establishing that the Defendant's speech was slurred and he may have tripped. On the other hand, circumstantial evidence was presented which tends to contradict the Defendant's claim that his intoxicated state precluded specific intent as to the attempted simple burglary conviction. This circumstantial evidence included establishment of the Defendant's capacity to link the truck to the store and use the alarm key to deactivate the alarm system.
In State v. Collins, 95-1503 (La.App. 3 Cir. 5/8/96); 677 So.2d 500 (citation omitted), the court noted:
The right of a defendant in a criminal proceeding to the effective assistance of counsel is constitutionally mandated by the Sixth Amendment to the United States Constitution. In order to establish a claim for ineffective assistance of counsel, a defendant must meet the two-pronged test enunciated by the United States Supreme Court. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).... First, the defendant must show that his counsel's performance was deficient. Id. Counsel's performance is deficient if it fails to meet the level of competency normally demanded of attorneys in criminal cases. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Fickes, 497 So.2d 392 (La.App. 3 Cir. 1986), writ denied, 515 So.2d 1105 (La. 1987).
* * *
Although we are not required to address the second prong of the test for ineffective assistance of counsel, namely that the attorney's deficiency prejudiced the outcome of the trial, we feel it is important to note that defendant failed to couple his allegation with a specific showing of prejudice as required in State v. Brogan, 453 So.2d 325 (La.App. *805 3 Cir.), writ denied, 457 So.2d 1200 (La. 1984).
Id. at 504-5.
Similarly, the court in State v. Wisinger, 618 So.2d 923, 929 (La.App. 1 Cir.), writ denied, 625 So.2d 1063 (La.1993), explained the Strickland test:
A convicted defendant who claims error because of his trial counsel's ineffectiveness must establish two separate elements in order to succeed:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Id. at 929.
In the instant case, it does not appear that the defense of intoxication could reasonably be inferred from the facts of this case. Therefore, counsel could not have performed deficiently in failing to request the instruction. See Wisinger, 618 So.2d 923. The evidence at trial established that the Defendant identified himself, conversed with at least one police officer, was not found in a drunken stupor, was able to select clothing from certain sizes and certain clothing lines to remove from the store, in addition to being able to deactivate the alarm system at a store for which he knew he had the key.
Considering the facts presented at trial, the Defendant is unable to show prejudice resulting to him from his trial counsel's performance.
The trial court must charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. The charge must be supported by the evidence presented at trial, because the court is not required to instruct the jury on abstract principles of law.
State v. Telford, 384 So.2d 347, 350 (La. 1980). Therefore, had the Defendant's counsel requested a jury charge on the defense of intoxication, the trial judge would not likely have done so, nor would the evidence seem to support such a charge.
The Defendant's pro se assignment of error does not have merit.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. A review of the record shows one error patent.
Although the minutes of sentencing show the trial court ordered the sentence for unauthorized use of a movable valued in excess of $1,000.00 to be served at hard labor, the sentencing transcript reveals the trial court did not state whether the sentence was to be served with or without hard labor. When there is a conflict between the transcript and the minutes, the transcript prevails. State v. Wommack, 00-137 (La.App. 3 Cir. 6/7/00); 770 So.2d. 365
Because the trial court failed to state whether the sentence is to be served with or without hard labor, it is indeterminate and contrary to La.Code Crim.P. art. 879. The sentence, therefore, must be vacated. We remand the matter to the trial court for imposition of a determinate sentence.
CONVICTION AFFIRMED. SENTENCE VACATED AND REMANDED FOR RESENTENCING.
NOTES
[1] On May 7, 1993, the State filed a bill of information, charging the Defendant with simple burglary of an inhabited dwelling, a violation of La. R.S. 14:62.2. Although this charge involved the same circumstances as the counts of the bill of information which is the subject of this appeal, the assistant district attorney stated at sentencing that this charge was "pending" and he did not know if he would have time to get to it.
[2] The sentencing transcript reveals that the Defendant's six-year sentence would be served consecutive to a five-year sentence he began serving when his probation was revoked for the crime at issue in this appeal.
[3] No objective tests to determine the Defendant's level of intoxication were performed.
[4] La.R.S. 14:15 provides, in part:

The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
* * *
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.
[5] The Defendant cites State v. Dardar, 353 So.2d 713 (La.1977), a distinguishable case in which the controversy on appeal was the judge's specific intent charge, not a charge on the defense of intoxication.