NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-326

STATE OF LOUISIANA

VERSUS

RAMAD SEREAL

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 08-1229
HONORABLE JOHN E. CONERY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

PHYLLIS M. KEATY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, James T. Genovese, and Phyllis M. Keaty, Judges.

AFFIRMED.

J. Phil Haney
District Attorney
Walter J. Senette, Jr.
Assistant District Attorney
300 Iberia Street, Suite 200
New Iberia, Louisiana  70560
(337) 369-4420
Counsel for:
       State of Louisiana

G. Paul Marx
Louisiana Appellate Project
Post Office Box 82389
Lafayette, Louisiana  70598-2389
(337) 313-0467
Counsel for Defendant/Appellant:
       Ramad Sereal

**Beth Smith Fontenot**
**Louisiana Appellate Project**
**Post Office Box 3183**
**Lake Charles, Louisiana  70602**
**(337) 491-3864**
**Counsel for Defendant/Appellant:**
      **Ramad Sereal**

**KEATY, Judge.**

Defendant, Ramad Sereal, was charged by bill of information with armed robbery, a violation of La.R.S. 14:64, and armed robbery using a firearm, a violation of La.R.S. 14:64.3. Prior to trial, Defendant filed a motion for preliminary examination and a motion to suppress or exclude all identifications. Defendant's motions were heard on August 21, 2009, after which the trial court found probable cause for the charges at issue in this appeal and denied the motion to suppress. Following a trial, a jury rendered a unanimous verdict of guilty of all charges. The trial court sentenced Defendant to thirty-five years at hard labor for armed robbery and then enhanced the sentence by five years for use of a firearm. Defendant now appeals his conviction. For the following reasons, we affirm Defendant's conviction.

## FACTS

On the evening of April 10, 2008, Phu Tong Le and his wife, Ai Nui Vu, were working at the A & M grocery store in Jeanerette, Louisiana. Their four-year-old son was present, playing in front of the main counter. As they were preparing to close the store at approximately 10:30 p.m., a man stormed in brandishing a shotgun, followed by a second man armed with a pistol. The first gunman jumped on top of the counter near the cash register, pointed his gun at Le and Vu, and demanded money. Meanwhile, the second gunman paced in front of the counter, pointing his handgun at Le and Vu. Le switched places with his wife, who was near the cash register, and gave the first gunman between $2,500 and $3,000. After the gunmen left the store, Le called the police.

Detective Terrence Moore of the Jeanerette Police Department (JPD) was dispatched to the crime scene on the night of the robbery. Le told him that when the first gunman jumped on the counter, his bandana slipped down, and he was

able to see the gunman's face. Le and Vu told Detective Moore that they recognized the first gunman as a regular customer. In addition, Le told him that although he did not know the first gunman's name, he knew that he had been shot outside the store in a prior incident. Detective Moore researched the matter and discovered that Defendant had been shot in the earlier incident. Detective Moore provided the information to the identification division of the Lafayette Parish Sheriff's Office, which located a photograph of Defendant and prepared two six-picture photographic line-ups, each depicting six African-American men with braided hair.

After speaking with the victims, Detective Moore began collecting evidence from the store.[1] Vu gave him a DVD of the robbery that had been recorded on the store's video surveillance system. Detective Moore lifted fingerprints from the door, the cash register, and the counter; the counter was also swabbed for DNA material. He recovered a shotgun shell that had allegedly been dropped by Defendant. He later removed an entire section of the plexi-glass counter that Defendant had jumped on because it contained a footprint.

The day after the robbery, Detective Moore showed one line-up to Le, who then identified the picture of Defendant. He showed Vu, separate and apart from Le, a line-up in which the order of the photographs was modified. She also identified Defendant.

Vu testified that she recognized Defendant as a frequent customer who sometimes came into the store two or three times a day. She stated that she was positive that the Defendant was the person who robbed the A & M grocery store with a shotgun in April 2008. Le testified similarly. He insisted that he

---

[1]The physical evidence in this case was lost before it could be processed and before the trial took place, as will be more fully discussed in the context of assignment of error number one.

2

immediately recognized Defendant because of his posture, his eyes, and his features.

## ASSIGNMENTS OF ERROR

Defendant now asserts that his conviction should be reversed based upon the following assignments of error:

I. State authorities were in bad faith because they had no procedures for handling physical evidence and recklessly failed to document custody and care of DNA, fingerprint and footprint evidence. As a result, the defendant's right to rebut weak identification evidence was frustrated due to the State's bad faith and the conviction was secured in violation of Due Process of Law.

II. Identification of appellant was so weak as to be unbelievable, where it was based on misleading lineup photographs in which only one known customer of the victims was included. The robbery victims therefore had an unusual familiarity with appellant and the lineup was misleading because all the others were strangers. The faulty procedure lead [sic] to misidentification because in addition, the police told the victims that their suspect was a person wounded in a shooting outside the store, another fact that could only apply to appellant.

## DISCUSSION

### Errors Patent

Pursuant to La.Code Crim.P. art. 920, we have reviewed this matter for errors patent on the face of the record. We find no such errors.

### Identification of Defendant

Defendant argues that the victims' identifications of him as one of the robbers were "so weak as to be unbelievable." He contends that the photographic line-ups were misleading because he was the only store customer included, thus, increasing the chance of him being erroneously identified as the robber. We will address this assignment first because it involves a challenge to the sufficiency of the trial evidence and, thus, has the potential to result in an acquittal. *See State v. Hearold*, 603 So.2d 731 (La.1992).

3

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant correctly notes that the State "must negate any reasonable probability of misidentification." *State v. Edwards*, 97-1797, p. 12 (La. 7/2/99), 750 So.2d 893, 902, *cert. denied*, 528 U.S. 1026, 120 S.Ct. 542 (1999). As this court has explained, "[i]n cases involving a defendant's claim that he was not the person who committed the crime, the *Jackson* rationale requires the state to negate any reasonable possibility of misidentification in order to carry its burden of proof." *State v. Guillory*, 00-386, pp. 5-6 (La.App. 3 Cir. 11/2/00), 773 So.2d 794, 798, *writ denied*, 00-3334 (La. 11/9/01), 801 So.2d 362. "[C]ourts must consider the totality of the circumstances to determine whether an identification presents a substantial likelihood of misidentification." *State v. Raines*, 00-1941, p. 5 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 639, *writ denied*, 01-1906 (La. 5/10/02), 815 So.2d 833.

Defendant argues that the chance for misidentification was great because no physical evidence linking him to the crime was found at the time of his arrest.[2] He

___

[2]Defendant preserved this issue for review, as he included it in a written motion to suppress. *See State v. Boyance*, 05-1068 (La.App. 3 Cir. 3/1/06), 924 So.2d 437, *writ denied*, 06-

also observes that the victims did not testify that they had personal knowledge of the earlier incident in which he was shot. Nevertheless, he notes police testimony that the victims identified one of the robbers as the same man who had been wounded in an earlier shooting in front of the store.

In *State v. Robinson*, 07-832 (La.App. 5 Cir. 4/15/08), 984 So.2d 856, *writ denied*, 08-1086 (La. 12/19/08), 996 So.2d 1132, a case remarkably similar to the instant case, the fifth circuit rejected a defendant's claim that the victims' out-of-court identifications of him were suggestive. There, as in the matter before us, the two victims of an armed robbery testified that they each immediately recognized the robber as a regular customer, even though he wore a bandana during the commission of the crime. There, as in the matter before us, the victims did not know the perpetrator's name at the time the crime was committed. Further, like in the present case, the defendant claimed that "the identifications made by [the victims] were influenced by their belief that the perpetrator looked familiar and lived in the neighborhood." *Id.* at 863. The *Robinson* court rejected the defendant's arguments that he was misidentified, finding that "the State presented sufficient evidence, at trial, through the testimonies of [the victims] for the jury to conclude that the defendant was the person who committed the offenses beyond a reasonable doubt." *Id.* at 867.

The second circuit reached a similar conclusion in a case involving a witness who had a prior acquaintance with the defendant:

> Here, the record reflects that while [the victim] did not know the defendant by name, she was able to identify Clark as the perpetrator independently of any outside influence. Further, [the victim] testified at trial that since she was wearing her eyeglasses right before Clark struck her with the concrete rock, she was able to identify the defendant immediately. She stated that she knew he was

1285 (La. 11/22/06), 942 So.2d 553. This court routinely reviews such arguments in the context of a sufficiency challenge without regard to whether they were raised in the trial court.

the person who mowed her yard and that he was the son of Margaret Jean Clark, who is also called "Jeannie." [The victim] was also able to identify Clark as the perpetrator the day after the incident during a photo lineup with absolute certainty and without any assistance.

. . . .

The record indicates that although [the victim] did not know the defendant by name, she clearly recognized him. There was no evidence of any suggestive actions on the part of police officers or any other person. As such, [the victim's] identification is reliable.

*State v. Clark*, 44,594, pp. 4-5 (La.App. 2 Cir. 8/19/09), 16 So.3d 1256, 1259-60, *writ denied*, 09-2106 (La. 8/18/10), 42 So.3d 400.

Le and Vu identified Defendant, albeit without knowing his name, before seeing the photographic line-ups. Each testified that they were sure that Defendant was the person who robbed the store with a shotgun. Thus, we find no merit to Defendant's argument that the line-ups were misleading or that the victims' identifications of him as the robber were weak. In light of *Robinson* and *Clark*, we conclude that the evidence was sufficient to support the jury's conclusion that Defendant was the person who committed the armed robbery of the A & M Grocery store with a firearm on the night of August 21, 2009. In addition, the jury necessarily made credibility determinations when deciding whether to accept the victims' testimonies that Defendant was the person who robbed them at gunpoint. We will "not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review." *See Kennerson*, 695 So.2d at 1371.

**Handling of the Evidence**

The physical evidence in this case was lost.[3] In his first assignment of error, Defendant argues that the State acted in bad faith because the JPD had no set

---

[3] Pictures of shotgun shells retrieved at the scene remained available. Defendant introduced them at trial.

6

procedures for handling physical evidence and failed to document its storage of DNA, fingerprint, and footprint evidence. The State argues that Defendant should not be able to raise this issue because it was not raised in a due process context below. We disagree, as the loss of the evidence was clearly at issue in Defendant's motion to quash and at trial.

Morman Alexander, chief of the JPD when the evidence was collected in this matter, testified that his office did not have any policies or procedures regarding the preservation and storage of evidence in April of 2008. Larry Jones testified that he was appointed chief of the JPD in November of 2008. He stated that he conducted an exhaustive search for the evidence seized in conjunction with the April 2008 robbery of the A & M grocery store, to no avail. Chief Jones has since established a chain of command for all evidence, including a log book to document when evidence comes into or is removed from the JPD.

Defendant contrasts the present case with *Illinois v. Fisher*, 540 U.S. 544, 124 S.Ct. 1200 (2004), where the Supreme Court found the police department's adherence to its procedures for handling evidence demonstrated good faith. From that holding, Defendant extrapolates that the JPD's lack of procedures amounted to bad faith. We disagree. The *Fisher* court was merely noting that the police department's adherence to its established procedure was evidence of its good faith, not setting forth such procedure as a requirement of good faith. Further, the handling of evidence in the present case was more indicative of negligence than of bad faith.

In *Fisher*, 540 U.S. at 547-49, 124 S.Ct. at 1202-03, the Supreme Court explained:

> We have held that when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever

such evidence is withheld. See *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In [*Arizona v.*] *Youngblood,* [488 U.S. 51, 109 S.Ct. 333 (1988)] by contrast, we recognized that the Due Process Clause "requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." 488 U.S., at 57, 109 S.Ct. 333. We concluded that the failure to preserve this "potentially useful evidence" does not violate due process "*unless a criminal defendant can show bad faith on the part of the police.*" *Id.,* at 58, 109 S.Ct. 333 (emphasis added).

. . . .

. . . [T]the applicability of the bad-faith requirement in *Youngblood* depended not on the centrality of the contested evidence to the prosecution's case or the defendant's defense, but on the distinction between "material exculpatory" evidence and "potentially useful" evidence. 488 U.S., at 57-58, 109 S.Ct. 333. . . . [T]he substance destroyed here was, at best, "potentially useful" evidence, and therefore *Youngblood's* bad-faith requirement applies.

The State observes that because Defendant was a regular customer to an establishment frequented by many customers, the fingerprint and DNA evidence would have had little persuasive power regardless of the results. The State submits that because no shoes were recovered from Defendant and because the missing shotgun shells were never tested, the shoeprint and the shotgun shells were only "potentially useful" and not "material exculpatory" evidence.

We agree that neither the presence nor the absence of Defendant's DNA or fingerprints would have much value as the victims testified that Defendant was frequently in the store prior to the robbery. Also, it is not clear in what way the apparently unfired shotgun shells could have been exculpatory. Regarding the shoeprint, the fact the police did not seize Defendant's shoes is of no moment, since Defendant potentially could have shown that the shoeprint did not match his size shoe. However, any such showing would have been weighed against the victims' identifications of Defendant. Applying the analyses of *Youngblood* and

8

*Fisher,* we conclude that the evidence at issue was "potentially useful" but not exculpatory. Further, Defendant has failed to show that the Jeanerette Police Department acted in bad faith. For the reasons discussed, this assignment lacks merit.

## DISPOSITION

For the foregoing reasons, Defendant's conviction is affirmed.

**AFFIRMED**.

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.